# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RYAN BIETSCH, BRYAN SCHNEIDER, | ) | |
| and MICHAEL PFORTMILLER, individually | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 15 C 5432 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SERGEANT'S PET CARE PRODUCTS, INC., | ) | |
| a Michigan corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After their dogs became ill from Pur Luv pet treats ("Pur Luv Treats"), Plaintiffs Ryan

Bietsch, Bryan Schneider, and Michael Pfortmiller filed this putative class action against Pur

Luv Treats' manufacturer, Defendant Sergeant's Pet Care Products, Inc. ("Sergeant's").

Plaintiffs bring claims for breach of implied and express warranties under state law and the

Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301 *et seq.*, and for violation of

the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp.

Stat. 505/1 *et seq.*, the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. 367.110 *et

seq.*, and nine other states' consumer fraud laws.[1] Sergeant's has filed a motion to dismiss the

complaint [24] and a motion to strike the class allegations from the complaint [21].

The Court grants Sergeant's motion to dismiss in part and denies it in part and denies the

motion to strike. With respect to the warranty claims, Plaintiffs have sufficiently alleged

representations that arguably could mislead a consumer and are thus actionable. They have

---

[1] Plaintiffs also alleged a claim for strict products liability (Count IV). In their response to Sergeant's motion to dismiss, they indicate that they are voluntarily dismissing that claim. Doc. 35 at 3 n.1. That being the case, the Court will not discuss this claim further.

adequately pleaded at this stage that these statements formed the basis of the bargain. The lack

of privity between Plaintiffs and Sergeant's is fatal only to Schneider's implied warranty claim

under Kentucky law and his accompanying MMWA implied warranty claim. The remaining

warranty claims do not fail based on Sergeant's claim of no pre-litigation notice. As for the

consumer fraud claims, Plaintiffs have sufficiently complied with Rule 9(b)'s heightened

pleading requirements. Finally, any inquiry into Plaintiffs' ability to pursue claims under the

laws of states in which they did not purchase Pur Luv Treats is premature at this time. Similarly,

although the Court expresses no opinion about the certifiability of Plaintiffs' proposed class, it

denies the motion to strike allegations as premature, finding that the allegations are at least not so

deficient as to warrant striking them at the pleading stage.

## BACKGROUND[2]

Sergeant's manufactures, markets, and sells Pur Luv Treats, which are semi-soft chew

treats for dogs. Pur Luv Treats come in several varieties, including "Grande Bones," "Chewy

Bites," "Mini Bones," and "Little Trix." Doc. 1 ¶ 36. All but the "Little Trix" variety have two

layers: a bone-colored outer layer and a red or brown inner core. The packaging and marketing

materials for Pur Luv Treats state that the treats are "nutritious" and that Sergeant's "provid[es]

the products you need for the health, well-being and happiness of your pet." *Id.* ¶ 1. For

example, like other varieties, the Grande Bones two-pound bacon flavored package states that

the "long lasting chews" have "nutritious ingredients," that the "essential nutrient[s]" are

recognized by the "AAFCO Dog Food Nutrient Profiles," and provides a "Guaranteed Analysis"

of each nutrient. *Id.* ¶ 38. The packaging also states that the Pur Luv Treats contain "no animal

---

[2] The facts in the background section are taken from Plaintiffs' complaint plus the exhibit attached thereto and are presumed true for the purpose of resolving Sergeant's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

by-products." *Id.* But contrary to the representations on the packaging, the Pur Luv Treats do not dissolve or break down upon ingestion, remaining as "rock-hard chunks" and causing bowel obstructions, other serious injuries, and even death. *Id.* ¶ 2. The Pur Luv Treats warn that they are "[f]or supervised consumption only" and to "[r]emove and discard if your pet attempts to swallow large pieces or chunks." *Id.* ¶ 41. The Pur Luv Treats do not contain any further warnings regarding digestion complications.

Plaintiffs all bought Pur Luv Treats for their dogs. Schneider, who currently lives in Ohio but previously lived in Kentucky, purchased Pur Luv Treats on June 15, 2013 at a PetSmart in Louisville, Kentucky for his dog, Tank. Between June 15 and 23, Schneider gave Tank approximately one Pur Luv Treat every three days. By June 23, Schneider noticed that Tank was lethargic in the evenings. Between June 23 and July 31, Tank had diarrhea, a low red blood cell count, and shallow breathing, and had to visit the veterinarian ten times. On July 31, after prescription medicine and a change in diet, Tank passed a large chunk of red material, identical to the center of the Pur Luv Treats. In a follow up visit with the veterinarian on August 8, Tank's blood count numbers were normal.

Bietsch, who lives in Illinois, purchased Pur Luv Treats for his dog, Wrigley, on March 20, 2015 at a PetSmart in Springfield, Illinois. On March 23, Bietsch gave Wrigley a PurLuv Treat. He noticed that Wrigley was sick the next day and took him to the veterinarian. The veterinarian took x-rays but was unable to determine what was wrong with Wrigley. Wrigley took his prescribed medication but his condition did not improve. Wrigley had emergency surgery on March 27. The veterinarian removed large red undigested chunks of material, which were similar in appearance to the inner filling of Pur Luv Treats. Even after the surgery, Wrigley continued to show little interest in food or water and continued vomiting. Bietsch took Wrigley

to the University of Illinois Veterinary Hospital for an upper gastrointestinal endoscopy study on April 6, 2015, which revealed deep lesions in Wrigley's esophagitis.  The veterinarians believed the Pur Luv Treats caused the lesions, which were further inflamed because Wrigley could not digest the Pur Luv Treats, causing a buildup of stomach acids.  Wrigley's condition continued to worsen, and he passed away on April 18, 2015.

Pfortmiller, who also lives in Illinois, purchased Pur Luv Treats for his dogs, Buddy and Ginger, on January 26, 2015 at a Cabelas in Hoffman Estates, Illinois.  He gave his dogs approximately one Pur Luv Treat every two days.  By February 9, Ginger was vomiting undigested chunks of the Pur Luv Treats, lethargic, and refusing to eat.  On February 21, Pfortmiller took Ginger to the veterinarian, who found an unusual gas pattern and irritation in Ginger's small intestine.  Between February 22 and March 9, Ginger passed chunks of red material, which are similar to the center of the Pur Luv Treats.  Her condition thereafter began to improve.

Online reviews of Pur Luv Treats echo Plaintiffs' experiences.  For example, one review on Amazon.com from May 26, 2015 states:

> Dog seemed fine at first, gave one per day.  After third bone he
> began throwing up frequently, always little recognizable pieces of
> the bones.  After seeing how many dogs have gotten sick from this
> I strongly suggest NOT buying these.

*Id.* ¶ 44.  Another review on May 19, 2015 reports that the poster's dog vomited "a huge, hard chunk of undigested treat . . . that he couldn't pass through his stomach" and that his "stool also ha[s] large, hard, undigested chunks of this treat."  *Id.*  One reviewer called the red center of the Pur Luv Treats the "red center of death."  *Id.*  Another reviewer claimed the Pur Luv Treat caused "$1,700 in veterinarian bills because it did not dissolve in [the] poor dog[']s stomach."  *Id.*  An online petition was started to remove the Pur Luv Treats from the market.

A test performed by Dr. Kelly Swanson and Dr. George Fahey of the University of Illinois Department of Animal Sciences revealed that the Pur Luv Treats do not sufficiently break down in dogs' digestive tracts. The investigators concluded that the Pur Luv Treats posed a "concern about safety," particularly related to "choking and possible esophageal blockage upon ingestion." *Id.* ¶ 53. They labeled Pur Luv Treats a "low digestible treat." *Id.*

## ANALYSIS

### I.  Sergeant's Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v.*

*Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

Sergeant's raises numerous arguments as to why Plaintiffs' claims should be dismissed, which the Court will address in turn. The breach of warranty claims and the MMWA claim are governed by the law of Plaintiffs' home states, as that is where they purchased the Pur Luv products and where they were injured. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, --- F. Supp. 3d ----, 2016 WL 74671, at *7 (N.D. Ill. Jan. 7, 2016). Similarly, the consumer fraud claims, as relevant to this motion, are governed by Illinois and Kentucky law, as Plaintiffs seek to proceed under ICFA and the KCPA. Thus, the Court will primarily look to Illinois and Kentucky law when analyzing the issues before it in this motion to dismiss, although decisions from other states may be considered for their persuasive value.

### A.     Actionable Statement

First, Sergeant's contends that the Court should dismiss Plaintiffs' state law warranty claims, MMWA claims, and consumer fraud claims because Sergeant's alleged representations that the Pur Luv Treats are nutritious, safe, and wholesome are non-actionable opinion or puffery.[3] "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926, 227 Ill. 2d 45, 316 Ill. Dec. 522 (2007); *see also Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 734 (W.D. Ky. 2013).

---

[3] In its memorandum, Sergeant's also argues that its representation that the Pur Luv Treats are nutritious is true. Doc. 25 at 4. But it does not back up this assertion. Because Sergeant's has provided the Court with no support for this assertion, the Court will not address this argument further at this time, instead focusing solely on whether Plaintiffs have alleged actionable statements. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").

Puffery includes "subjective descriptions related to quality, such as "high performance,"

"perfect," "custom quality," or "expert workmanship." *Avery v. State Farm Mut. Auto. Ins. Co.*,

835 N.E.2d 801, 846–47, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005).  But "statements that ascribe

specific virtues to a product that it does not possess are not considered puffing." *Reid v.*

*Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 908 (N.D. Ill. 2013).  Whether a statement is puffery or

actionable is generally a factual question. *L. Zingerman, D.D.S., P.C. v. Nissan N. Am., Inc.*, No.

14 C 7835, 2015 WL 1840952, at *4 (N.D. Ill. Apr. 20, 2015); *see also Reid*, 964 F. Supp. 2d at

908 (court unable to conclude at the motion to dismiss stage whether defendant's statement that

its hair treatment was a "smoothing" product was mere puffery).

In support of its argument, Sergeant's relies on *Tylka v. Gerber Products Co.*, No. 96 C

1647, 1999 WL 495126 (N.D. Ill. July 1, 1999).  In *Tylka*, the court found that Gerber's

advertisements of its baby food products as having "optimum nutrition" or the "most wholesome

nutritious safe foods you can buy anywhere in the world" fell "within the supermarket sales

pitch" and were non-actionable. *Id.* at *8.  The court noted that Gerber's advertisements were

broad and "all encompassing," "address[ing] such a large market that they bespeak caution"

because they covered "baby food generally" and not specific, individual products. *Id.*

Unlike in *Tylka*, Sergeant's advertising here is sufficiently specific so as to induce

customer reliance and make its representations actionable. *See In re Milo's Dog Treats Consol.*

*Cases*, 9 F. Supp. 3d 523, 531–32 (W.D. Pa. 2014) (representations on dog treat packaging,

including that the treats were made in compliance with government specifications, were

"verifiable facts and sufficiently specific to induce customer reliance").  Sergeant's packaging

conveys that the Pur Luv Treats are nutritious, promising a "guaranteed analysis" of the essential

nutrients contained in the Pur Luv Treats in accordance with the "AAFCO Dog Food Nutrient

Profiles." Doc. 1 ¶ 38. The reference to these recognized standards suggests that Sergeant's nutrition claims are tested and verifiable, essentially placing a seal of approval on Sergeant's claims. *See Holt v. Globalinx Pet, LLC*, No. SACV13-0041 DOC (JPRx), 2013 WL 3947169, at *11 (C.D. Cal. July 30, 2013) (use of term "wholesome" on dog treat packaging could not be discredited as mere puffery where "wholesome" had "significant legal meaning" under Texas law). Because Sergeant's packaging conveys to a consumer that the Pur Luv Treats are safe, wholesome, and digestible, the representations cannot be said to be puffery. *See Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919, 923 (N.D. Ill. 2013) (allowing plaintiffs to pursue claims based on statements that dog treats were "wholesome" and "nutritious," stating that "'wholesome' at the very least conveys the safety of the treats to the consumer").

Moreover, Sergeant's representations are distinguishable from those in *Tylka*, where Gerber claimed that its products were the "most wholesome nutritious safe foods you can buy anywhere in the world." *Tylka*, 1999 WL 495126, at *8. In *Tylka*, "[i]t was surely the idea that there were no more nutritious, safe, or wholesome products available *anywhere* else around the globe that rose to the level of unbelievable exaggeration." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010). But here, Sergeant's is not claiming to make the "best" or the "most" nutritious treats or even that its treats are of "premium" quality, which would rise to the level of puffery. *See Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 892 (N.D. Ill. 2014) ("Opinions that a product is 'premium' or 'perfect' do not generally create express warranties."); *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 4:15 CV 384 RWS, 2015 WL 3645262, at *12 (E.D. Mo. June 10, 2015) (statement that "the best nutrition is personalized" is non-actionable puffery because consumers understand that when product is advertised as "the best," "the advertiser is not contending that the particular attribute or feature

8

can only be found in its product"). Instead, Sergeant's has used objectively verifiable terms—as it represents on its own packaging—to present that the Pur Luv Treats are nutritious, safe, and wholesome, despite the fact that they do not dissolve or break down after canine ingestion. These representations "arguably *could* mislead a reasonable consumer" and are thus actionable. *Chacanaca*, 752 F. Supp. 2d at 1126; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 & n.3 (9th Cir. 2008) (use of term "nutritious," when combined with packaging with pictures of fruit and statements that product was made with "fruit juice and other all natural ingredients," was actionable); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW), 2012 WL 764199, at *23 (E.D.N.Y. Mar. 5, 2012) ("[W]hile certain statements that a product is 'safe' *may* constitute puffery, it is an actionable deceptive practice to mislead consumers into believing a product is safe for a particular use when it is not.").

### B.     Other Elements of Plaintiffs' Warranty Claims

Next, Sergeant's argues that Plaintiffs' implied and express warranty and MMWA claims fail because they have not pleaded certain essential elements of those claims. Specifically, Sergeant's argues that the use of the term "nutritious" on the Pur Luv Treats' packaging does not create an express warranty and is merely a product description that does not trigger MMWA liability. Additionally, Sergeant's argues that Plaintiffs have only alleged in conclusory fashion that the warranty was part of the basis of the bargain on which Plaintiffs relied when purchasing the Pur Luv Treats, asking that the Court require more specific reliance allegations.

A promise or description of the goods made by the seller and made part of the basis of the bargain between the parties creates an express warranty that the goods shall conform to that promise or description. 810 Ill. Comp. Stat. 5/2-313; Ky. Rev. Stat. § 355.2-313. Sergeant's argues that Plaintiffs have merely identified statements on its packaging that are product

descriptions as the alleged express warranties, but that these descriptions are not sufficient to trigger an express warranty claim. Sergeant's argument does not take into account that other courts have allowed similar express warranty claims for "wholesome" and "nutritious" products to proceed. *See Adkins*, 973 F. Supp. 2d at 923;[4] *Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 WL 3245203, at *6 (W.D. Penn. June 25, 2013). Sergeant's has not provided a reason for the Court to deviate from these other decisions.

Sergeant's also argues that the state law and MMWA claims fail because Plaintiffs have not sufficiently alleged that the warranty formed part of the basis of their bargain. Sergeant's contends that this is an added reliance-type element that Plaintiffs must plead. Although some states require a plaintiff to "show reliance on a statement or representation for it to be considered part of the basis of the bargain," *In re Rust-Oleum*, 2016 WL 74671, at *24 (citation omitted) (internal quotation marks omitted), in Illinois, a seller's representations create a rebuttable presumption of reliance by the buyer.[5] *See Felley v. Singleton*, 705 N.E.2d 930, 934, 302 Ill. App. 3d 248, 235 Ill. Dec. 747 (1999) ("[R]epresentations by the seller . . . are presumed to be affirmations of fact that become part of the basis of the bargain [and] constitute express warranties, regardless of the buyer's reliance on them, unless the seller shows by clear affirmative proof that the representations did not become part of the basis of the bargain."); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 320 (S.D. Ill. 2007) (noting

---

[4] Sergeant's argues in reply that the *Adkins* court dismissed the express warranty claims against certain defendants because these defendants made no actionable representations, so that *Adkins* actually supports its argument because Sergeant's also has made no actionable representations. Doc. 41 at 6. But the *Adkins* court dismissed the express warranty claim against merchants who were named as defendants and had sold the pet food, distinguishing them from the manufacturer of the pet food at issue, against whom the express warranty claim remained pending. 973 F. Supp. 2d at 923. Analogizing to this case, then, *Adkins* supports the Court's conclusion that the express warranty claim should proceed against Sergeant's, which manufactured the Pur Luv Treats.

[5] The MMWA follows the relevant state law reliance requirements. *In re Rust-Oleum*, 2016 WL 74671, at *24.

Illinois' minority position); *In re Dial Complete Mktg. & Sales Practices Litig.*, --- F.R.D. ----, 2015 WL 8346122, at *22 (D.N.H. Dec. 8, 2015) (under Illinois express warranty law, "a seller's representations are presumed to be part of the basis of the bargain, regardless of the buyer's reliance, unless the seller can show otherwise by affirmative proof"); *In re Hardieplank Fiber Cement Siding Litig.*, Nos. 12-md-2359, 2013 WL 3717743, at *11 (D. Minn. July 15, 2013) (allowing Illinois express warranty claim to proceed past motion to dismiss where plaintiffs did not plead that they relied on defendants' materials in purchasing siding). Thus, for the express warranty claims governed by Illinois law, Plaintiffs need not have pleaded that Sergeant's representations were part of the basis of the bargain.

Under Kentucky law, however, a plaintiff must allege that he relied on the claimed warranty. *See Young v. Stock Yard Farm & Dairy Supply Inc.*, No. 1:10-CV-00186-R, 2011 WL 864834, at *4–5 (W.D. Ky. Mar. 10, 2011); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001). Sergeant's contends that Plaintiffs have not sufficiently done this because they state only that they were "exposed" to Sergeant's marketing materials and thereby relied on the warranty. *See* Doc. 1 ¶¶ 9, 14, 26, 79. But at this stage nothing more is required, as drawing all inferences in Plaintiffs' favor, the Court can reasonably infer that Plaintiffs relied on the representations on the Pur Luv Treats packaging when deciding to buy the treats for their pets.[6] Sergeant's can further explore the issue of reliance in discovery.

---

[6] In its reply, Sergeant's argues that Plaintiffs have not adequately met Rule 9(b)'s heightened pleading standard for reliance. Doc. 41 at 8 n.7. The Court will discuss this issue in connection with Plaintiffs' consumer fraud claims, as Rule 9(b) does not apply to the reliance requirement for Plaintiffs' express warranty claim under Kentucky law. *See In re Rust-Oleum*, 2016 WL 74671, at *25–26, 29 (discussing reliance in connection with express warranty and consumer fraud claims, but addressing Rule 9(b) only with respect to the consumer fraud claims).

### C.      Privity

Sergeant's also argues that the warranty claims fail because Plaintiffs did not purchase the Pur Luv Treats directly from it and instead bought them from intermediaries (i.e. PetSmart and Cabelas).  To maintain an express or implied warranty claim under Illinois or Kentucky law, a plaintiff must be in privity of contract with the defendant.  *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *5 (N.D. Ill. Nov. 13, 2014); *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006) (citing Ky. Rev. Stat. § 355.2-318).  An MMWA claim requires the same privity as its companion state law warranty claim.  *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003).

There are exceptions to the privity requirement, however.  For example, under Illinois law, a manufacturer may be liable to a buyer for breach of an express warranty for representations or promises made on the manufacturer's documents or other materials.  *Mednick*, 2014 WL 6474915, at *5.  Kentucky federal courts have predicted that Kentucky state courts would find a similar exception for representations made by manufacturers on product labels intended for the product's consumers.  *See Naiser*, 975 F. Supp. 2d at 739–40; *Levin v. Trex Co.*, No. 3:10-cv-692-CRS, 2012 WL 7832713, at *3 (W.D. Ky. Mar. 5, 2012).  Here, Plaintiffs have alleged that Sergeant's made statements directly on the Pur Luv Treats packaging.  This is sufficient to allow Plaintiffs to maintain their express warranty claims against Sergeant's under Illinois and Kentucky law.  *See Mednick*, 2014 WL 6474915, at *5; *Naiser*, 975 F. Supp. 2d at 739–40.

For Plaintiffs' implied warranty claim, under Illinois law, an exception exists for articles of food sold in sealed containers so as to allow consumers to recover against manufacturers for the implied warranty's breach because the sealing of the container "demonstrates that the defect

existed when the product left [the manufacturer's] control." *Adkins*, 973 F. Supp. 2d at 922

(applying exception to pet food products); *Warren v. Coca-Cola Bottling Co. of Chicago*, 519

N.E.2d 1197, 1201–02, 166 Ill. App. 3d 566, 117 Ill. Dec. 30 (1988) (establishing exception,

while noting it was intended for packages for "human consumption"); *see McAfee v. Cargill,*

*Inc.*, 121 F. Supp. 5, 6 (S.D. Cal. 1954) ("The same public policy considerations present for the

protection of humans in the use of packaged and processed foods are also present where instead

we deal with animals.").[7] Here, Plaintiffs have alleged that the Pur Luv Treats were sold in

sealed containers, invoking the exception to the privity requirement.

But Plaintiffs have not set forth a similar foodstuffs exception under Kentucky law nor

has the Court been able to find one. Instead, it appears that Kentucky strictly construes the

privity requirement for implied warranty claims, "limit[ing] warranty protections to those

engaged in a buyer-seller relationship . . . regardless of whatever compelling arguments may be

made as to public policy concerns." *Brown Sprinkler Corp. v. Plumbers Supply Corp.*, 265

S.W.3d 237, 240 (Ky. Ct. App. 2007); *see also Bosch v. Bayer Healthcare Pharm., Inc.*, 13 F.

Supp. 3d 730, 749 (W.D. Ky. 2014) (holding that the *Naiser* ruling regarding privity exception

for express warranty claims has no effect on implied warranty claims). Thus, Kentucky Plaintiff

Schneider's implied warranty claim is dismissed under Kentucky law. Similarly, to the extent

---

[7] Sergeant's argues that *McAfee* is not helpful to Plaintiffs because it does not distinguish between express
and implied warranties. But *McAfee* is helpful to the extent that it provides support for applying the
foodstuff exception, in which courts generally discuss foodstuffs "intended for human consumption," to
pet food as well. *McAfee*, 121 F. Supp. at 6; *see also In re Milo's*, 9 F. Supp. 3d at 545 (discussing
reasons why foodstuffs application should be extended to pet food). Similarly, Sergeant's misreads *In re*
*Milo's* in arguing that it does not support a finding that privity is not required for implied warranty claims.
*See* Doc. 41 at 9 n.8. The court in *In re Milo's* was only considering whether privity was required for the
plaintiff's claim for breach of an implied warranty of merchantability under the MMWA, and not for
breach of an express warranty. 9 F. Supp. 3d at 545. Thus, the discussion of the foodstuffs exception in
*In re Milo's*, although not binding on the Court, is directly applicable to Plaintiffs' argument for why
privity is not required for their implied warranty claims here.

Schneider is asserting an implied warranty claim under the MMWA, that claim is dismissed as well.

Finally, although not a warranty claim, Sergeant's argues that Schneider's KCPA claim requires contractual privity and so must be dismissed because Schneider purchased the Pur Luv Treats not from Sergeant's but from PetSmart. Although the KCPA typically allows a purchaser only to pursue the immediate seller, an exception exists for claims against a defendant who provided warranties to the ultimate purchaser for his or her benefit. *Naiser*, 975 F. Supp. 2d at 743 (citing *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). Here, Plaintiffs have alleged that Sergeant's made express warranties for their benefit and so this exception allows Schneider to pursue his KCPA action against Sergeant's despite the lack of privity. *See id.* (allowing plaintiffs to maintain KCPA claim despite lack of direct buyer-seller relationship).

### D. Pre-Litigation Notice

Next, Sergeant's argues that Plaintiffs' warranty claims must be dismissed because Plaintiffs did not provide Sergeant's with appropriate pre-suit notice. The Uniform Commercial Code, as adopted by both Illinois and Kentucky, requires that a plaintiff provide the defendant with notice of the breach of warranty "within a reasonable time after he discovers or should have discovered any breach." 810 Ill. Comp. Stat. 5/2-607(3)(a); Ky. Rev. Stat. § 355.2-607(3)(a). The MMWA has a similar notice requirement—that the defendant be provided "a reasonable opportunity to cure." 15 U.S.C. § 2310(e). Courts typically incorporate the relevant state law requirements on pre-suit notice for MMWA claims. *See Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864, 292 Ill. App. 3d 59, 225 Ill. Dec. 868 (1997).

The timing of the required notice varies by state, however. Under Kentucky law, the filing of the complaint and service of summons is considered sufficient notice. *Travelers Prop. Cas. Co. of Am. v. Rapid Power Corp.*, No. 5:12-CV-00038-R, 2013 WL 1898833, at *6 (W.D. Ky. May 3, 2013); *see also Mullins v. Wyatt*, 887 S.W.2d 356, 358 (Ky. 1994) (the lack of an allegation of pre-suit notice "is not fatal to a civil action for breach of warranty").

On the other hand, in Illinois, the filing of the complaint does not serve as sufficient notice, as the purpose of the notice requirement is to provide adverse parties with "an incentive to attempt settlement of breach of warranty claims prior to commencement of a suit." *Reyes v. McDonald's Corp.*, No. 06 C 1604, 2006 WL 3253579, at *3 (N.D. Ill. Nov. 8, 2006). Plaintiffs may be excused from the notice requirement if they allege a physical injury or that Sergeant's had actual knowledge of the specific product's defect (i.e. "where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"). *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1996). But Plaintiffs do not attempt to take advantage of either exception, instead arguing that Bietsch notified Sergeant's customer service department by telephone regarding his dog's injuries prior to this suit being filed. This information is not contained in the complaint but instead in a declaration attached to Plaintiffs' response. Plaintiffs contend they may add to their complaint in this way because the allegations in the declaration are consistent with those in the complaint. *See Help at Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (plaintiff may add facts "by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint"). Sergeant's argues that the Court should disregard the affidavit because it is not central to Plaintiffs' claims, the complaint does not refer to the content of the affidavit and so it cannot be consistent with any allegations therein, and the statements in the

affidavit must be tested. But Sergeant's misapprehends the purpose of the affidavit, as it is only being used to set forth additional allegations that are consistent with the claims Plaintiffs have made and that may be tested through discovery; Plaintiffs are not adding additional facts to change their theory of the case, which would be inappropriate. *See Falkner v. Redflex Traffic Sys., Inc.*, No. 14-cv-5459, 2015 WL 1621238, at *4 (N.D. Ill. Apr. 10, 2015) (plaintiff could not use response to change the theory of relief altogether in response to a motion to dismiss). As Bietsch's affidavit cures the pre-suit notice requirement (and dismissing the warranty claims to require Plaintiffs to include this information in an amended complaint would only cause delay), the Court considers the affidavit and finds it sufficient here.[8] Thus, dismissal for lack of pre-suit notice is not warranted.

### E.    Consumer Fraud Claims[9]

Sergeant's argues that Plaintiffs' consumer fraud claims do not meet Rule 9(b)'s heightened pleading requirements. Although Rule 9(b) does not apply to an unfair practices claim under ICFA, Plaintiffs do not contest that Rule 9(b) applies to the ICFA claims asserted here. *See* Doc. 35 at 21; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) only applies to deceptive practices claims, as unfair practices claims are not based in fraud); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that conduct is deceptive.").

---

[8] Sergeant's does not argue that Bietsch's notice to Sergeant's should not serve as pre-suit notice on behalf of Pfortmiller, and so the Court will treat it as meeting the pre-suit notice requirement for both Illinois Plaintiffs.

[9] Although Plaintiffs seek to represent a multistate class and thus bring claims under a number of states' consumer fraud statutes, because Sergeant's challenges these claims generally and the named Plaintiffs are only from Illinois and Kentucky, the Court will analyze Plaintiffs' consumer fraud claims under Illinois and Kentucky law.

First, Sergeant's generally contends that Plaintiffs have not specifically alleged what Sergeant's said or did that was deceptive. But Plaintiffs have provided the required details, indicating that Sergeant's advertised that the Pur Luv Treats were nutritious while refusing to disclose that the Pur Luv Treats were in fact not nutritious, safe, or wholesome, and instead were dangerous and not fit for canine consumption. Plaintiffs have also alleged that Sergeant's knew of the alleged defects and that the representations it was making were false. This is sufficient to meet Rule 9(b)'s specificity requirement. *See In re Rust-Oleum*, 2016 WL 74671, at \*27–28.

Next, Sergeant's argues that Plaintiffs have not sufficiently alleged that Sergeant's statements caused Plaintiffs' harm. Both ICFA and the KCPA require that the plaintiff allege a causal nexus between the defendant's allegedly deceitful statements and the plaintiff's damages. *Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 838 (W.D. Ky. 2012); *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313, 235 Ill. 2d 544, 337 Ill. Dec. 186 (2009).[10] Each named Plaintiff has provided details about when he purchased Pur Luv Treats and was exposed to the representations, alleging that he would not have purchased the treats for his dog(s) if he had known that they did not dissolve or break down after ingestion and that they were deceived by the statements. Sergeant's argues that this is not sufficient to allege proximate cause, however, because Plaintiffs only state they were "exposed" to Sergeant's marketing for the Pur Luv Treats. Although Plaintiffs' complaint may not use the exact words Sergeant's believes are necessary, the allegations of exposure to the Pur Luv Treats' packaging reasonably suggest that Plaintiffs' decision to purchase the treats was connected to the allegedly deceptive statements, particularly when combined with Plaintiffs' allegation of deception. *See Stephens v. Gen. Nutrition Cos.*, No. 08 C 6296, 2009 WL 1437843, at \*3 (N.D. Ill. May 21, 2009) (rejecting defendant's

---

[10] This is not the same thing as reliance, however. *See Corder*, 838–39; *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001).

argument that plaintiffs did not plead proximate cause because they did not include allegations that they were "exposed" to the advertisements, finding that "from the contention that Plaintiffs were actually deceived by the advertisements . . . it logically follows that Plaintiffs must have been exposed to them"). Plaintiffs' complaint is distinguishable from ones with no allegations that a plaintiff saw or heard the allegedly false statement, automatically precluding a finding of proximate cause. *See Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *9 (N.D. Ill. Dec. 18, 2015) (where plaintiff did not allege he reviewed warranty or ever saw alleged misstatement, he could not state ICFA claim); *De Bouse*, 922 N.E.2d at 314–316 (collecting cases and summarizing the "basic principle" that "[i]f a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause"). Therefore, Plaintiffs have met Rule 9(b) here, with further inquiry into the consumer fraud elements left for discovery. *See In re Rust-Oleum*, 2016 WL 74671, at *29 (noting that proximate cause is usually a factual question not amenable to resolution at the motion to dismiss stage); *Naiser*, 975 F. Supp. 2d at 742 (plaintiffs' allegations that they bought and used product as proximate result of defendant's violations and that the product's undisclosed corrosive nature caused them damage was sufficient to plead the causal connection required under the KCPA).

**F.    Standing**

Finally, Sergeant's argues that Plaintiffs cannot assert claims under the laws of any state in which they do not reside or did not purchase the Pur Luv Treats, as they have not suffered any injury in those jurisdictions. Plaintiffs respond that they are seeking relief on behalf of a multistate class, making consideration of this argument premature because they have standing to assert their own claims at this time.

Courts are split as to the appropriate time to consider a challenge to a named plaintiff's ability to represent a class with respect to claims under laws of states in which the named plaintiff does not reside. In *Amchem Products, Inc. v. Windsor*, in considering whether a class should be certified for settlement purposes, the Supreme Court resolved "logically antecedent" class certification issues before standing issues, observing that without a certified class, the unnamed, proposed class members' standing was irrelevant. 521 U.S. 591, 612, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Similarly, in *Ortiz v. Fibreboard Corp.*, although acknowledging that "[o]rdinarily . . . [an] Article III court must be sure of its own jurisdiction before getting to the merits," the Court again found class certification issues to be "logically antecedent" to Article III concerns and addressed whether the proposed settlement class met Rule 23's requirements before considering the putative class representative's standing. 527 U.S. 815, 831, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999). The Seventh Circuit followed suit in *Payton v. County of Kane*, addressing class certification prior to standing issues. 308 F.3d 673, 680–81 (7th Cir. 2002) (following *Ortiz* to "consider issues of class certification prior to issues of standing," noting that "once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs").

Courts in this district, however, are divided as to whether these decisions require a plaintiff to establish standing at the pleading stage to pursue claims under state laws in which that plaintiff does not reside or cannot claim to have personally suffered an injury. *Compare Halperin v. Int'l Web Servs., LLC*, --- F. Supp. 3d ----, 2015 WL 3561509, at *6 (N.D. Ill. June 5, 2015) (question of whether plaintiff can represent multistate class with respect to claims under other states' consumer fraud statutes is best left for class certification stage); *Cohan v. Medline*

*Indus.*, No. 14 CV 1835, 2014 WL 4244314, at *2 & n.1 (N.D. Ill. Aug. 27, 2014) ("Standing in the class action context can and should be evaluated with respect to the individual named-plaintiff and later—in the event a class is certified—with respect to the class as a whole."); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *5 (N.D. Ill. Nov. 5, 2009) ("*Ortiz* created an exception, limited to class actions, to the general rule that courts address standing as a threshold matter."), *with Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 731–35 (N.D. Ill. 2015) (finding that plaintiffs needed a named representative from each state to proceed on claims under each state's laws); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CR 3690, 2013 WL 4506000, at *6 (N.D. Ill. Aug. 23, 2013) (*Ortiz* "requir[es] a court simultaneously facing both class certification and Article III standing to deal with Rule 23 issues first when they are dispositive, but [does] not direct[ ] district courts to postpone an inquiry into the threshold issue of justiciability outside of that context"). Having considered both interpretations, the Court agrees with the cases finding the standing issue to be premature at this stage. The named Plaintiffs have Article III standing to pursue their claims under the laws of the states in which they reside, having allegedly suffered injuries caused by Sergeant's. Their "capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states." *In re Aftermarket Filters*, 2009 WL 3754041, at *5. These standing issues therefore arise from Plaintiffs' attempts to represent the multistate class, making class certification issues "logically antecedent" to the standing concerns. *Id.* For this reason, addressing standing now is premature and will be deferred until the Court addresses class certification on the merits.[11]

---

[11] Although Sergeant's has filed a motion to strike class allegations, as discussed below, that motion is also premature, as Plaintiffs have not had the opportunity to pursue class discovery and it is not apparent

## II.     Sergeant's Motion to Strike Class Allegations

Concurrent with its motion to dismiss, Sergeant's has moved to strike Plaintiffs' class allegations from the complaint.  Under Rule 23(c)(1)(A), the Court must determine whether to certify a class "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  Rule 23(d)(1)(D) provides the Court with the ability to require the pleadings to be amended to remove class action allegations.  Fed. R. Civ. P. 23(d)(1)(D).  Motions to strike class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective.  *See Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").  But if the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature.  *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014).

Class certification is appropriate where four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are met.  Fed. R. Civ. P. 23(a).  Additionally, one of the three subsections of Rule 23(b) must be met.  Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  Here, Plaintiffs seek certification under Rules 23(b)(2) and (b)(3).  Rule 23(b)(2) requires a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

from the pleadings that the class allegations are deficient.

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the class members must be identifiable. *Oshana*, 472 F.3d at 513. Unlike with a motion for class certification, on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion. *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).

### A. Predominance

First, Sergeant's argues that Plaintiffs' claims fail the predominance requirement of Rule 23(b)(3) because individualized issues of fact and law predominate. According to Sergeant's, these individualized issues of fact include causation and damages. Sergeant's contends, for example, that the need to delve into each dog's injuries renders class certification inappropriate. *See* Doc. 22 at 4 (citing *U.S. Dental Inst. v. Am. Ass'n of Orthodontists*, No. 74-c-2924, 1977 WL 1442 (N.D. Ill. July 21, 1977), and *Miller v. Janssen Pharmaceutica Prods., L.P.*, No. 05-cv-4076-DRH, 2007 WL 1295824 (S.D. Ill. May 1, 2007)). Plaintiffs respond that this is not a personal injury case where such inquiries will be important because they are instead seeking to recover the price they paid for the Pur Luv Treats—an economic injury every purchaser of the treats shares—based on the Pur Luv Treats being indigestible and not fit for canine consumption. This injury (and the damages arising from it), according to Plaintiffs, is susceptible to common proof. *See In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (damages reflecting difference in market price between tile as represented and tile with alleged deficiencies would apply to every class member). To the extent the inquiry involves a damages issue, individualized damages questions do not automatically preclude class certification. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("It has long been recognized that the need for individual damages determinations at this later stage of the litigation does not

itself justify the denial of certification.").  And to the extent Sergeant's is asking the Court to

determine whether Plaintiffs will be able to demonstrate that the representations Sergeant's made

regarding the Pur Luv Treats were deceptive or incorrect based on a class-wide method of proof,

the Court finds that question premature.  Indeed, the cases on which Sergeant's relies in support

of this argument all dealt with attempts to certify a class, not motions to strike class allegations,

where the plaintiffs had the opportunity to pursue discovery and present the court with evidence

as to how they could prove their case on a class-wide basis.  *See Mahtani v. Wyeth*, No. 08-6255

(KSH), 2011 WL 2609857, at *8–9 (D.N.J. June 30, 2011) (citing to pre-approval efficacy,

safety, and toxicology studies and other statistics); *Gartin v. S & M Nutec LLC*, 245 F.R.D. 429,

436 (C.D. Cal. 2007) (recounting deposition testimony, call logs, internet quotes, and expert

testimony that indicated individualized issues that would arise); *Ikonen v. Hartz Mountain Corp.*,

122 F.R.D. 258, 262 (S.D. Cal. 1988) (in deciding plaintiffs' motion for class certification,

finding that individual case histories of pets would differ).  Similarly, the Court cannot at this

stage determine that the involvement of different varieties of Pur Luv Treats in the case would

make class certification inappropriate.

Sergeant's also argues that Plaintiffs have not sufficiently alleged causation, but the

Court has already dealt with that issue in connection with the motion to dismiss.  Moreover, the

Seventh Circuit has rejected the categorical position that individualized issues of causation

preclude class certification.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir.

2014) ("Every consumer fraud case involves individual elements of reliance or causation. . . . [A]

rule requiring 100% commonality would eviscerate consumer-fraud class actions."); *Pella Corp.

v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("Proximate cause . . . is necessarily an individual

issue and the need for individual proof alone does not necessarily preclude class certification.").

Thus, the Court cannot at this stage conclude that individualized issues of fact predominate so as to warrant striking the class allegations.

Next, Sergeant's argues that the Court should strike the class allegations because Plaintiffs seek to pursue a multistate class. Sergeant's cites several decisions in which the Seventh Circuit has raised concerns regarding the propriety of multistate actions, particularly with respect to warranty and fraud claims. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)."); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (in remanding class certification issue to district court for further consideration, noting that nationwide classes in breach of warranty and fraud actions "pose[ ] serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification"). Sergeant's argues that the consumer fraud statutes under which Plaintiffs seek to proceed have different statutes of limitations and requirements for proving damages, in addition to allowances for treble damages and attorneys' fees. *See* Doc. 22 at 8. Similarly, it contends that Plaintiffs' warranty claims are subject to variations in state laws such as whether plaintiffs must demonstrate reliance, notice, and privity of contract. *See id.* at 9–10.

The Court again finds the proposed inquiry into the impact of state law variations premature. Although Sergeant's generically recites differences in the state laws under which Plaintiffs seek to proceed, this is not sufficient to demonstrate that a multistate class is "per se unworkable." *Rysewyk*, 2015 WL 9259886, at *8 (refusing to strike class allegations where defendants did not show "specific impediments" to a multistate class, noting that "Plaintiffs might not carry their burdens at class certification, but nothing in the complaint or defendants'

explanation of the law persuades me that it is practicable to resolve the certification question at this stage"); *see also Mednick*, 2014 WL 6474915, at \*6–7 (deferring consideration of impact of state law variations until class certification stage, finding that "the mere possibility that the presence of class members in others states may require the application of different state laws does not satisfy the facially and inherently deficient standard").

### B. Ascertainability

Sergeant's next argues that the class allegations should be stricken because the proposed class definition is overbroad and not sufficiently ascertainable. A class is ascertainable when it is "defined clearly, "based on objective criteria," and not "defined in terms of success on the merits." *Mullins*, 795 F.3d at 659–60. At this stage of the litigation, Plaintiffs need not also establish a "reliable and administratively feasible way to identify" the class members. *Id.* at 657–58 (internal quotation marks omitted). A class is overbroad if it includes "a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 824 (7th Cir. 2012).

Sergeant's argues that Plaintiffs' proposed class is overbroad and unascertainable because it includes individuals who did not suffer any injury. But Plaintiffs respond that, based on their allegations and theory of the case—that the Pur Luv Treats are essentially worthless because of the significant risk of injury they pose to any dog, regardless of whether a dog suffered injury—every purchaser of Pur Luv Treats is a member of the putative class. *See Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (actual damages for ICFA claim are properly pleaded based on diminished value of product, without need to plead damage to person or product). Although Sergeant's has attached a declaration to its reply indicating that less than .01% of Pur Luv Treats sold generated complaints, the Court disregards this declaration, as it

was included only in reply, Plaintiffs have had no opportunity to address it, and the Court is only considering whether the pleadings demonstrate that the class allegations are defective. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). At this stage, without further development, the Court cannot conclude that Plaintiffs' proposed class is overbroad or unascertainable. *See Suchanek*, 764 F.3d at 758 (evidentiary record must be considered to determine whether plaintiffs' claims of deceptive packaging were shared by large number of individuals in determining whether class definition is overbroad). Although the class definition may need additional refinement as discovery progresses, the Court will not strike the class allegations at this stage, where it adequately provides Sergeant's with notice of the class Plaintiffs will seek to certify, is definite, and is based on objective criteria. Plaintiffs may further modify the proposed class definition, or the Court may do so on its own initiative, at the class certification stage. *See Chapman v. First Index*, 796 F.3d 783, 785 (7th Cir. 2015) (noting that "the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)," with the judge able to "ask for the parties' help"); *Rysewyk*, 2015 WL 9259886, at *8 (refusing to strike class that presented fail-safe issues, noting that it was "primarily . . . a placeholder that, together with the complaint's other allegations, gives fair notice of the type of permissible class plaintiffs will seek to certify"); *Equal Rights Ctr. v. Kohl's Corp.*, No. 14 C 8259, 2015 WL 5920883, at *2 (N.D. Ill. Oct. 7, 2015) (noting that "additional information, criteria, or procedures may be required of Plaintiffs at the class certification stage" but declining to strike class allegations based on ascertainability issues).

### C.     Rule 23(b)(2) class

Finally, Sergeant's argues that Plaintiffs' request for certification pursuant to Rule 23(b)(2) should be stricken because Plaintiffs primarily seek monetary relief.  Although Rule 23(b)(2) is intended to provide injunctive relief that would benefit the entire class and used where "the plaintiffs' primary goal is not monetary relief," *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of the City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015), the fact that Plaintiffs in this case are seeking both injunctive and monetary relief does not make Plaintiffs' request for certification under both Rule 23(b)(2) and (b)(3) facially deficient.  Indeed, one option Plaintiffs may choose to pursue is "divided certification," proceeding first under Rule 23(b)(2) and then under Rule 23(b)(3) if they succeed in obtaining declaratory relief.  *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371–72 (7th Cir. 2012).  The Court is not willing to close off this option at this stage.  Thus, the Court denies Sergeant's motion to strike Plaintiffs' class allegations, although Sergeant's may raise any defenses it has to certification when Plaintiffs affirmatively seek class certification on a fully developed record.

## CONCLUSION

For the foregoing reasons, Sergeant's motion to dismiss [24] is granted in part and denied in part.  The Court dismisses Plaintiffs' claim for strict products liability (Count IV), the implied warranty claim (Count I) under Kentucky law, and the MMWA (Count III) to the extent Schneider is asserting an implied warranty claim under the MMWA.  Additionally, the Court denies Sergeant's motion to strike class allegations [21].  Sergeant's answer to the complaint is due by March 31, 2016.

Dated: March 15, 2016

_____
SARA L. ELLIS
United States District Judge