# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RYAN BIETSCH, MICHAEL PFORTMILLER, JUSTIN MANNER, and SELIM FREIHA individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | Case No. 15-cv-05432 |
| Plaintiffs, | ) ) | Honorable Sara L. Ellis |
| v. | ) ) | Hon. Susan E. Cox |
| SERGEANT'S PET CARE PRODUCTS, INC., a Michigan corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel For Plaintiffs*
*And The Proposed Putative Classes*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

TABLE OF EXHIBITS .................................................................................................... vii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT .................................................................................................................... 6

I.     The Classes Are Ascertainable And Properly Defined ............................................ 6

     A.     The Classes Are Clearly Defined And Are Not Vague ............................ 8

     B.     The Classes Are Defined By Objective, Rather Than Subjective, Criteria ............ 8

II.     The Classes Satisfy Federal Rule Of Civil Procedure 23(a) .................................... 9

     A.     Rule 23(a)(1): The Classes Are So Numerous
          That Joinder Of All Members Is Impracticable ...................................... 9

     B.     Rule 23(a)(2): There Are Numerous
          Questions Of Law Or Fact Common To The Classes ............................... 10

     C.     Rule 23(a)(3): Plaintiffs' Claims Are Typical Of The Claims Of The Classes ..... 12

     D.     Rule 23(a)(4): Plaintiffs Will Fairly And
          Adequately Protect The Interests Of The Classes .................................. 13

III.     The Classes Satisfy Rule 23(b)(2) ...................................................................... 14

IV.     The Classes Satisfy Rule 23(b)(3) ...................................................................... 15

     A.     Common Issues Predominate Over
          Questions Affective Individual Class Members .................................... 16

          1.     Evidence Common To The Class Will Prove
              Defendant's Liability For Plaintiffs' Breach Of Warranty Claims ............ 16

              a.     Plaintiffs Will Prove The Existence, Scope And
                   Breach Of Defendant's Warranties Using Common Evidence ...... 17

    b.  Proving Proximate Cause For
       The National Class's Warranty Claims
       Does Not Require Individualized Proof Of Reliance ...................18

    c.  Common Proof Will Establish That
       Defendant Was On Notice Of The Treats' Defect........................19

    d.  Any Purported "Individual" Issues
       Defendant May Raise Will Not Defeat Predominance.................21

  2.  The Consumer Protection Statutes Of The Consumer
     Fraud Multistate Class States Are Materially Identical .............................22

  3.  Damages Are Common To Every Member Of The Classes.....................24

 B.  A Class Action Is The Superior Method Of Adjudication.....................................25

CONCLUSION...........................................................................................................................26

**TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................... 23

**UNITED STATES COURT OF APPEALS CASES**

*Alliance to End Repression v. Rochford*,
565 F.2d 975 (7th Cir. 1977) ...................................................................................... 8

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014) ...................................................................................... 9

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ............................................................................... *passim*

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) .................................................................................... 12

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014) .................................................................................... 10

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) .................................................................................... 12

*Kleen Prods. LLC v. Int'l Paper Co.*,
 831 F.3d 919 (7th Cir. 2016) ................................................................................... 24

*Lambert v. Nutraceutical Corp.*,
--- F.3d ---, No. 15-56423, 2017 WL 4081089 (9th Cir. Sept. 15, 2017).................... 24

*Messner v. Northsore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ................................................................................ 9, 16

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ............................................................................... *passim*

*Payton v. Cnty. of Kane*,
308 F.3d 673 (7th Cir. 2002) ..................................................................................... 6

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) ............................................................................... passim

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ..................................................... 25

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ..................................................... 11

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ..................................................... 23

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ..................................................... 10, 11, 12

**UNITED STATES DISTRICT COURT CASES**

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015) ..................................................... 10

*Baxter v. Kawasaki Motors Corp.*,
259 F.R.D. 336 (N.D. Ill. 2009) ..................................................... 6, 10, 12

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
280 F.R.D. 408 (N.D. Ill. 2012) ..................................................... 7

*F.T.C v. Simon*,
86 F.R.D. 375 (N.D. Ill. 1980) ..................................................... 14

*Galoski v. Stanley Black & Decker, Inc.*,
No. 1:14 CV 553, 2015 WL 5093443 (N.D. Ohio Aug. 28, 2015) ..................................................... 20

*Garner v. Healy*,
184 F.R.D. 598 (N.D. Ill. 1999) ..................................................... 13, 18, 19

*Guttman v. La Tapatia Tortilleria, Inc.*,
Case No. 15-cv-02042-SI, 2015 WL 7283024 (N.D. Cal. Nov. 18, 2015) ..................................................... 19

*Hinman v. M & M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ..................................................... 13

*In re Bromine Antitrust Litig.*,
203 F.R.D. 403 (S.D. Ind. 2001) ..................................................... 24

*Johnson v. Gen. Mills, Inc.*,
276 F.R.D. 519 (C.D. Cal. 2011) ..................................................... 21

*Keegan v. Am. Honda Motor Co., Inc.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ..................................................... 20

*Maxwell v. Arrow Fin. Servs., LLC*,
No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ......................................... 9

*Mednick v. Precor, Inc.*,
--- F.R.D. ---, No. 14 C 3624, 2017 WL 1021994 (N.D. Ill. Mar. 16, 2017) .............................. 22

*Mullins v. Direct Digital, LLC*,
Civil Action No. 13 CV 1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)...................... 22, 25

*Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*,
No. 2:02-cv-1288, 2007 WL 894833 (S.D. Ohio Mar. 22, 2007) ................................. 19

*Porter v. Pipefitters Ass'n Local Union 597*,
208 F. Supp. 3d 894 (N.D. Ill. 2016) ..................................................................... 14, 16

*Rodriguez v. Berrybrook Farms, Inc.*,
672 F. Supp. 1009 (W.D. Mich. 1987) ....................................................................... 8

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009).................................................................... *passim*

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006).................................................................................. 9

*Suchanek v. Sturm Foods, Inc.*,
311 F.R.D. 239 (S.D. Ill. 2015) ...................................................................... 22, 24, 25

**STATE SUPREME COURT CASES**

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) .............................................................................................. 23

**STATE COURT OF APPEALS CASES**

*Norcold, Inc. v. Gateway Supply Co.*,
154 Ohio App. 3d 594 (Ohio Ct. App. 2003) ............................................................ 19

*Weinstat v. Dentsply Int'l, Inc.*,
180 Cal. App. 4th 1213 (Cal. Ct. App. 2010) ............................................................ 18

**FEDERAL STATUTES & RULES**

FED. R. CIV. P. 23 ................................................................................................. *passim*

## OTHER AUTHORITIES

*McLaughlin on Class Actions* ......................................................................................... 8

### TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | April 13, 2017, Expert Report of Kelly Swanson<br>[Filed Under Seal] |
| 2 | Excerpts of November 16, 2016, Deposition Testimony of Mark Levin<br>[Filed Under Seal] |
| 3 | Excerpts of Adverse Events Database, SERGEANTS030400<br>[Filed Under Seal] |
| 4 | Excerpts of November 17, 2016, Deposition Testimony of Krystal Sautter<br>[Filed Under Seal] |
| 5 | Product Adverse Reaction Report, SERGEANTS031248-50<br>[Filed Under Seal] |
| 6 | Product Adverse Reaction Report, SERGEANTS032180-82<br>[Filed Under Seal] |
| 7 | Product Adverse Reaction Report, SERGEANTS031713-15<br>[Filed Under Seal] |
| 8 | Product Adverse Reaction Report, SERGEANTS030643-45<br>[Filed Under Seal] |
| 9 | Excerpts of December 16, 2016, Deposition Testimony Of James Tyler<br>[Filed Under Seal] |
| 10 | Releases<br>[Filed Under Seal] |
| 11 | Amazon.com Customer Reviews, PLAINTIFF000001-48 |
| 12 | Change.org Petition, PLAINTIFF000070-74, PLAINTIFF000049-69 |
| 13 | Consumer Feedback Review Presentation, SERGEANTS000001-24<br>[Filed Under Seal] |
| 14 | Product Development Brief, SERGEANTS023623-25<br>[Filed Under Seal] |
| 15 | May 31, 2017, Supplemental Expert Report of Joseph J. Egan<br>[Filed Under Seal] |

16     Siprut PC Firm Resume

17     Consumer Fraud Multistate Class State Law Chart

Plaintiffs Ryan Bietsch, Michael Pfortmiller, Justin Manner, and Selim Freiha (collectively, "Plaintiffs") seek certification of national and multi-state classes for their claims against Defendant Sergeant's Pet Care Products, Inc. ("Sergeant's" or "Defendant").

## INTRODUCTION

Sergeant's makes Pur Luv dog treats. Plaintiffs allege the treats are dangerous and harmed their dogs. Sergeant's disagrees, and claims the treats are safe. Plaintiffs also allege that, given the known problems with the treats, marketing the treats as safe and nutritious was false or misleading. Sergeant's likewise contests that issue. Those are the two ultimate issues in this case.

If a jury decides Plaintiffs are correct on either issue, Plaintiffs and the classes they seek to represent would be entitled to damages (the Rule 23(b)(3) classes) and to an injunction requiring that Sergeant's recall, reformulate or relabel the treats (the Rule 23(b)(2) classes). In such circumstances, each class member would win. On the other hand, if a jury decides Sergeant's is correct and the treats are (a) safe and (b) Sergeant's marketing was not false or misleading, Plaintiffs and each class member would lose. Those two common questions—the safety of the Pur Luv dog treats and the truthfulness of the marketing of those treats—overwhelm all other issues in this case.

Plaintiffs seek to certify a national class of all purchasers of the Pur Luv dog treats at issue based on their warranty claims. Plaintiffs further seek to certify a multi-state class based on their consumer fraud claims, and, alternatively, state classes based on their consumer fraud claims.

## BACKGROUND

Sergeant's manufactures, sells, and markets Pur Luv Grande Bones and Pur Luv Mini Bones (the "Pur Luv Treats") as a semi-soft chew treat for dogs. Sergeant's packaging and

labeling of the Pur Luv Treats uniformly proclaim the treats' "nutritious ingredients" and state that the treats' "essential nutrients" are recognized by AAFCO Dog Food Nutrient Profiles. The packaging and labeling also states that there is a "guaranteed analysis" of each nutrient in the Pur Luv Treats. (First Am. Compl. ¶¶41-47, Dkt. No. 75.) In general, Sergeant's represents the treats as nutritious, safe and wholesome. (*Id.* ¶47.) As this Court previously found, "The reference to these recognized standards suggests that Sergeant's nutrition claims are tested and verifiable, essentially placing a seal of approval on Sergeant's claims." (March 15, 2016, Opinion And Order, Dkt. No. 52, p. 8.)

In reality, the Pur Luv Treats suffer from a fatal defect—they often fail to break down in dogs' stomachs, resulting in vomiting, obstruction, and, in some cases, death. The Pur Luv Treats contain a "red center" that many dogs struggle to properly digest, resulting in a granular, gravelly substance blocking dogs' digestive systems. Dr. Kelly Swanson, a Professor in the Departments of Animal Sciences and Veterinary Clinical Medicine at the University of Illinois and a frequent consultant to pet food manufacturers, performed an *in vitro* disappearance test of Pur Luv Grande Bone treats that resulted in a low gastric and small intestinal disappearance. (The April 13, 2017, Expert Report of Kelly Swanson is attached hereto as Ex. 1 and cited as "Swanson Report p. _.") These troubling results "call[ ] into question the safety of the product tested, with the potential for choking or gastrointestinal blockage especially if large pieces are consumed." (*Id.* p. 2.)[1]

---

[1] Those results were on their way to being replicated by Defendant's first expert, Dr. Alexa Dash—until Sergeant's lawyers stopped the testing. (Levin Dep. p. 48, lines 7-13, Ex. 2.) Sergeant's next expert, Dr. Jorg Steiner, then did testing that largely corroborated Dr. Swanson's results; but Dr. Steiner believes that such testing is irrelevant (including his own) and that the treats are safe. In any event, to the extent any of Dr. Steiner's opinions are admissible, those issues will ultimately be decided by a jury.

While Sergeant's might not have known the precise measurements of the low gastric and intestinal disappearance rates with the Pur Luv Treats—it did not bother to do any digestibility testing until *after* this case was filed in 2015—Sergeant's has known since at least early 2011 that consumers who fed their dogs Pur Luv Treats were experiencing problems with their dogs digesting the Pur Luv Treats. Sergeant's produced in discovery its "Adverse Events Database," (SERGEANTS030400, an excerpt of which is attached hereto as Exhibit 3), in which it catalogued *hundreds* of consumer complaints regarding the Pur Luv Treats, dating from as early as February 2011.[2] Those records reflect a striking similarity among the consumer complaints made to Sergeant's—digestibility and vomiting complaints are made repeatedly, at times as frequently *as every three days*. (*E.g.*, Sautter Dep. p. 88 lines 2-17 (digestibility complaints reported to Sergeant's every three days in March 2016); Sautter Dep. p. 111 line 19 – p. 112 line 12 (adverse events reported to Sergeant's every three days), Ex. 4.) Following motion practice, Sergeant's also produced the underlying case files for many of these adverse events.

Those files reveal Sergeant's developed a well-scripted approach to "resolving" these complaints. In those situations where consumers sought reimbursement for veterinarian bills, Sergeant's would require the consumer to provide those veterinarian bills and accompanying records. Sergeant's also developed a questionnaire that it sent to the veterinarians that treated these consumers' dogs. Many of the veterinarians provided Sergeant's with completed questionnaires; numerous questionnaires indicated that the veterinarian was 100% confident that the dogs' illness was caused by the Pur Luv Treat. (*E.g.*, Ex. 5, SERGEANTS031248-50 (100%

---

[2] Sergeant's produced the adverse events database electronically in Excel format. In depositions, various fields were printed and used as exhibits (literally thousands of pages), supplemented by the electronic version. Because the details of the database are not at issue in Plaintiffs' Motion for Class Certification, Plaintiffs are only providing an excerpt here for illustrative purposes to show the type of common evidence contained in the database, specifically the first 25 pages from Dep. Ex. 53 and any specific pages cited herein.

causation at question no. 12; "I don't understand why this product or any similar products are still available for sale when there have been many complaints against it and a lawsuit about it from 2013" at question no. 14); Ex. 6, SERGEANTS032180-82 (100% causation); Ex. 7, SERGEANTS031713-15 (100% causation); Ex. 8, SERGEANTS030643-45 (100% causation); see also Ex. 3 (excerpts from database) at p. 27, line 182; p. 244, line 1612; p. 336, line 2282; p. 476, line 3346.)

Sergeant's took **no** action in response—it didn't go back and reexamine its manufacturing process, it didn't do any testing concerning the safety of the treats, and it didn't seek input from its retailers to see if they were receiving similar complaints about the treat. (See Tyler Dep. at p. 15 lines 10-21 (no steps to make changes in the manufacturing process), Ex. 9; Levin Dep. at p. 28 lines 15-24, p. 31 lines 3-10 (no digestibility studies until March 2016), Ex. 2.)

But Sergeant's did take action concerning those consumers who complained to it. Sergeant's bought their silence. Sergeant's would refund certain consumer's veterinarian bills, *provided* the consumer signed a release waiving any right to sue Sergeant's over the Pur Luv Treats, agreeing that any payment was not an admission of liability, and keeping the terms of the release agreement confidential. (Ex. 10 (Dep. Ex. 57.)  Customers who refused to sign were not paid. (Sautter Dep. p. 70 line 18 – p. 71 line 2, Ex. 4.)

Despite Defendant's attempts to silence consumers and sweep the Pur Luv Treats' digestibility problems under the rug, consumers spoke out about the deadly risk the treats pose to dogs in other forums outside of Sergeant's. Consumer reviews of the Pur Luv Treats on Amazon.com are replete with horror stories and warnings about dogs having trouble digesting the treats, with many suffering obstructions and blockages to the point of requiring surgery. (*See* Amazon.com reviews, Ex. 11.) One enterprising consumer organized a petition on Change.org

-4-

that called for the Pur Luv Treats to be recalled and reformulated. (Nasise Change.org Petition, Ex. 12.) This petition gathered 721 supporters and over 100 comments—all telling the same tragic story of dogs suffering needlessly in trying to pass the Pur Luv Treats. (*See id.*)

Even based on just those reports made to it, Sergeant's knew it had a problem.[3] Internal records show Defendant's employees discussing consumers' perceptions that the Pur Luv Treats had a common digestibility problem. (*See* Presentation, Ex. 13; Levin Dep. p. 36 lines 3-4, Ex. 2.) Sergeant's even went so far as to reformulate the treats in order to lighten the red pigment of the red center, thereby acknowledging *and concealing* the digestibility problem posed by the red center. (*See* Product Development Brief*, 7/16/15,* Dep. Ex. 60 at 23624 ("Looking for a pigment that when ingested and eliminated by a dog will look like it's food.", Ex. 14); *see also* Presentation, Ex. 13.) But while Sergeant's reformulated the Pur Luv Treats to combat the *perception* of digestibility problems, Sergeant's has steadfastly refused to recall or reformulate the treats in such a way that they do not pose a substantial risk of harm to dogs. The Pur Luv Treats remain on pet stores' shelves for purchase by unsuspecting consumers, thereby placing countless dogs at risk of illness and death.

Plaintiffs Bietsch, Pfortmiller, Freiha, and Manner bring this lawsuit on behalf of all individuals who purchased the Pur Luv Treats. The relief Plaintiffs seek is simple—recall and

---

[3] In the litigation, Sergeant's takes the position that the adverse events rate is low based on comparing the number of reported complaints that *it* received to the total number of treats sold, on the premise that dog owners would report all such problems to Sergeant's. Assuming that such a statistic is even relevant—generally a nonessential product that might cause death is not considered safe merely because a low number of deaths might result—Sergeant's assumes that every dog owner was able to trace the problem to the treat, called Sergeant's, reached a live person, and had the complaint documented by Sergeant's. But Sergeant's witnesses acknowledged that not all information Sergeant's received from consumers or their agents who handled consumer phone calls was recorded. (E.g., Sautter Dep. p. 35 lines 7-16, Ex. 4.) And as far as reports to retailers, and other public reports of problems with the treats, Sergeant's adverse events database does *not* consider those. (Sautter Dep. p. 32 lines 8-22, Ex. 4.)

reformulate the Pur Luv Treats, and refund the purchase price of the Pur Luv Treats, which are rendered economically worthless due to their defective nature. To that end, Plaintiffs seek certification of a National Class for their claims of breach of implied warranty (Count I), breach of express warranty (Count II), and violation of the Magnuson-Moss Warranty Act (Count III). Plaintiffs also seek certification of an eleven-state Consumer Fraud Multistate Class for the violation of those states' materially identical consumer protection statutes (Count IV). While certification of both of these classes is warranted for the reasons described herein, Plaintiffs alternatively seek certification of a California class, an Illinois class, and an Ohio class for their respective warranty and consumer protection claims.

## ARGUMENT

"[I]n determining whether to grant certification, whether a claim will ultimately be successful is not a consideration." Baxter v. Kawasaki Motors Corp., 259 F.R.D. 336, 339 (N.D. Ill. 2009) (citing *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("a determination of the propriety of class certification should not turn on the likelihood of success on the merits")); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) ("*Pella I*") ("Any issue relating to whether class members will ultimately be able to prove their damages goes to the merits of the case and not to class certification"). "A class action is the efficient procedure for litigation such as this, a case involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013).

**I.      The Classes Are Ascertainable And Properly Defined.**

In order to be properly "ascertainable," a class must be defined clearly by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); *Boundas v.*

*Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) ("a class must be definite enough that the class can be ascertained") (quotation omitted). Plaintiffs seek class certification of the following classes:

### National Class

All persons in the United States who purchased Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present.[4]

### Consumer Fraud Multistate Class

All persons residing in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, and Washington who purchased Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present.

In the alternative to the Consumer Fraud Multistate Class, Plaintiffs seek certification of the following state subclasses:

### Illinois Class

All persons residing in the State of Illinois who purchased Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present.

### California Class

All persons residing in the State of California who purchased the Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present.

### Ohio Class

All persons residing in the State of Ohio who purchased the Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present.

---

[4]Excluded from each of the proposed classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

These classes satisfy the Seventh Circuit's ascertainability requirement because: (a) the classes are clearly defined and not vague; and (b) the classes are defined by objective criteria, rather than subjective criteria.

### A. The Classes Are Clearly Defined And Are Not Vague.

Classes are defined too vaguely when they are amorphous or imprecise. *Mullins*, 795 F.3d at 659-60 (collecting cases). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660 (citing *McLaughlin on Class Actions* §4.2; *Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1012 (W.D. Mich. 1987)). Here, the class definitions identify a particular group (purchasers of Pur Luv Treats) harmed in a particular way (deceived by Defendant's labels into believing that the Pur Luv Treats were safe for dogs to consume) during a specific period (June 19, 2010, through the present) and in particular areas (the United States for the National Class and the eleven specified states for the Consumer Fraud Multistate Class). Hence, the classes are defined clearly and satisfy the Seventh Circuit's ascertainability requirement. *Mullins*, 795 F.3d at 660. *Rodriguez*, 672 F. Supp. at 1012.

### B. The Classes Are Defined By Objective, Rather Than Subjective, Criteria.

In order to be ascertainable, classes must be defined by objective criteria, rather than subjective criteria. *Mullins*, 795 F.3d at 660 (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977)). "Plaintiffs can generally avoid the subjectivity problem by defining the class in terms of conduct (an objective fact) rather than a state of mind." *Mullins*, 795 F.3d at 660. Here, the classes are defined in terms of conduct—*i.e.*, the act of purchasing Pur Luv Treats. If a consumer purchased a Pur Luv Treat during the class period, he or she is a member of the class. This satisfies the "objectivity" requirement for an ascertainable class.

*Mullins*, 795 F.3d at 660 (affirming certification of class where the class definition "focuses on the act of purchase").

## II.    The Classes Satisfy Federal Rule Of Civil Procedure 23(a).

In order to bring their claims on behalf of a class, Plaintiffs must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a); *Messner v. Northsore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiffs do.

### A.    Rule 23(a)(1): The Classes Are So Numerous
####       That Joinder Of All Members Is Impracticable.

A class action is appropriate where the classes are "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[A] class can be certified without determination of its size, so long as it [is] reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014); *see also Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004) ("In determining whether the claimed class contains a sufficient number of members, the court is permitted to 'make common sense assumptions in order to find support for numerosity'") (quotation omitted). "Because there is no mystical number at which the numerosity requirement is established, courts have found this element satisfied when the putative class consists of as few as 10 to 40 members." *Maxwell*, 2004 WL 719278, at *2 (collecting cases); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("While there is no magic number that automatically satisfies numerosity, it is often said that 40 members . . . or even fewer . . . are enough to make up a class") (citations omitted). Here, Defendant sold over 9.7 million Pur Luv Treats from June 19, 2010 through the end of 2016. (*See* Egan Report Supplemental Attachment 1.1 (compiling

and summarizing sales information provided by Defendant).)[5] Hence, the classes almost certainly consist of tens of thousands of members. Moreover, Defendant has received *hundreds* of complaints from consumers describing their dogs' obstruction, digestibility and vomiting problems after consuming the Pur Luv Treats. (Ex. 3, Excerpts from SERGEANTS030400 (Defendant's "Adverse Events Database" cataloging consumer complaints regarding the Pur Luv Treats), see *supra* n. 2.) Numerosity is satisfied here.

**B.     Rule 23(a)(2): There Are Numerous
        Questions Of Law Or Fact Common To The Classes.**

A class action requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "The Supreme Court has explained that for purposes of Rule 23(a)(2) even a single common question will do." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014) (quotation omitted); *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 559 (N.D. Ill. 2015) ("For purposes of Rule 23(a)(2) even a single common question will do") (quotation omitted); *Baxter v. Kawasaki Motors Corp.*, 259 F.R.D. 336, 341 (N.D. Ill. 2009) (noting that commonality "is not a demanding requirement and may be satisfied by a single common issue"). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756 (citing, *inter alia*, *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("*Pella II*") (common questions whether product sold to all class members was inherently defective and whether defendant knew of the defect); *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (common question whether roofing shingles complied with industry standard as represented on packaging); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) (common

---

[5] The Supplemental Expert Report of Joseph J. Egan, Plaintiffs' damages expert, is attached hereto as Ex. 15.

question whether products sold to class members contained certain defects)). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Pella I*, 257 F.R.D. at 478 ("Plaintiffs can meet [the commonality] requirement by showing a common nucleus of operative facts between the named plaintiffs and the class"). "Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common." *Suchanek*, 764 F.3d at 756 (emphasis original).

Plaintiffs' claims arise from Defendant's conduct of: (a) manufacturing the defective Pur Luv Treats; and (b) falsely and deceptively labeling those Pur Luv Treats by representing that they were safe and fit for dogs. This conduct raises numerous common questions of law and fact, including:

(1)     Whether the Pur Luv Treats' low disappearance rates render them unsafe for dogs;

(2)     Whether the packaging and labelling of the Pur Luv Treats was false or misleading;

(3)     Whether the packaging and labelling of the Pur Luv Treats adequately disclosed the significant health risks described above, including, but not limited to, vomiting, constipation, intestinal obstructions, and death;

(4)     Whether the Pur Luv Treats sold by Defendant were unfit for their intended use;

(5)     Whether Defendant failed to properly test the Pur Luv Treats prior to market entry (or at any other relevant time), such that an award of punitive damages is appropriate;

(6)     Whether the members of the classes have been injured by Defendant's conduct; and

(7)     Whether the Pur Luv Treats should be recalled and reformulated.

All of these questions are common to *every single purchaser* of the Pur Luv Treats and, thus, common to *every single class member*. Most importantly, the two central issues giving rise to Defendant's liability—the fact that Pur Luv Treats are defective, and Defendant's packaging and labelling of the Pur Luv Treats—are common to the entire class, such that certification is warranted. *Butler*, 727 F.3d at 801 (affirming class certification where "There is a single, central, common issue of liability: whether [defendant's product] was defective"); *Suchanek*, 764 F.3d at 756 (holding commonality was satisfied where "the plaintiffs' claims and those of the class they would like to represent all derive from a single course of conduct by [defendant]: the marketing and packaging of [the product]").

**C.  Rule 23(a)(3): Plaintiffs' Claims Are Typical Of The Claims Of The Classes.**

Federal Rule of Civil Procedure 23(a)(3) mandates that the claims of the representative parties are typical of the claims of the class. FED. R. CIV. P. 23(a)(3). "The issue of typicality is closely related to commonality and should be liberally construed." *Pella I*, 257 F.R.D. at 479 (citing *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). "The typicality requirement can be met when the representative's party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory." *Pella I*, 257 F.R.D. at 479; *Baxter*, 259 F.R.D. at 342 ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory") (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "It is only necessary for the claim of the class representative and the claims of the class at large to have the same essential characteristics; there may still be differences." *Baxter*, 259 F.R.D. at 342 (quotation and citations omitted).

Plaintiffs' claims are typical of the class members because Plaintiffs bought the same Pur Luv Treats as the members of the class. These Pur Luv Treats all had the same defect—they posed a substantial risk of digestibility and vomiting problems to the dogs that consumed them. Further, the Pur Luv Treats purchased by Plaintiffs bore the same labels, containing Defendant's uniform representations and omissions regarding the safety, nutrition and wholesomeness of the Pur Luv Treats. Plaintiffs, like the class members, suffered economic damages by paying to purchase the Pur Luv Treat, which was rendered worthless by its defective nature. Plaintiffs meet Rule 23's typicality requirement. *Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (holding typicality was satisfied where the plaintiff, like the class, purchased the defendant's products and "believed that they were getting something more than they ultimately received").

### D. Rule 23(a)(4): Plaintiffs Will Fairly And Adequately Protect The Interests Of The Classes.

In order to bring a class action, the representative parties are required to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequacy requirement is satisfied where the named representative (1) has retained competent counsel, (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Pella I*, 257 F.R.D. at 480; *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) ("Representation is adequate where the plaintiff (1) has a sufficient stake in the outcome to ensure zealous advocacy, and has no claims antagonistic to or conflicting with the claims of other class members, and (2) is represented by qualified, experienced counsel").

The interests of Plaintiffs and the class members are fully aligned in determining whether: (1) the Pur Luv Treats were defective; and (2) Defendant's uniform representations were likely to deceive a reasonable consumer. Further, Plaintiffs are well-informed about the

litigation, have and will continue to act in the best interests of the Class, and will participate in the litigation as needed. In addition, Plaintiffs have retained counsel with significant experience in prosecuting consumer class actions, including product mislabeling and false advertising cases. *See* Ex. 16 (Siprut PC firm resume). Thus, the adequacy requirement is met. *Porter v. Pipefitters Ass'n Local Union 597*, 208 F. Supp. 3d 894, 908-09 (N.D. Ill. 2016) (holding adequacy was satisfied where "Plaintiffs have participated in the litigation, have been deposed, and have demonstrated a basic understanding of the claims involved in the litigation"). In accordance with Federal Rule of Civil Procedure 23(g)(1), Plaintiffs request the Court appoint Siprut PC as class counsel.

### III. The Classes Satisfy Rule 23(b)(2).

Plaintiffs seek certification under Rule 23(b)(2), which provides for a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "[T]he party opposing the class must have acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." *F.T.C v. Simon*, 86 F.R.D. 375, 382-83 (N.D. Ill. 1980). However, "[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct for one or more of them to seek relief under rule 23(b)(2)" *Id*. at 383.

Plaintiffs seek injunctive relief in the form of having the Pur Luv Treats reformulated so that they no longer pose a digestibility risk to dogs. Plaintiffs also seek to have the current formulation of the Pur Luv Treats pulled from the market so that unsuspecting consumers will not purchase the Pur Luv Treats and feed them to their dogs, thereby placing those dogs at substantial risk of digestibility and vomiting problems. Plaintiffs' liability expert, Dr. Kelly

Swanson, performed digestibility testing on the Pur Luv Treats and finds that the results of that testing "calls into question the safety of the product tested, with the potential for choking or gastrointestinal blockage especially if large pieces are consumed." (Ex. 1, Swanson Report p. 2.) Thus, Dr. Swanson will testify how "it would be prudent to consider a reformulation or redesign of this dog treat because it exhibits such low digestibility characteristics." (*Id.*) Dr. Swanson also explains how the limited testing Sergeant's performed on its Pur Luv Treats was inadequate. (*Id.* pp. 2-7.) In sum, Dr. Swanson will testify at trial that:

> Based on my testing, the review of the testing provided by Sergeant's Pet Care Products, Inc., the lack of any contemporaneous testing performed by Sergeant's on the digestibility of these treats when they were introduced to the market, and the high volume of negative consumer reports, it would be prudent and reasonable to consider reformulating or redesigning these treats.

(*Id.* pp. 6-7.) This evidence establishes that Sergeant's acted consistently, toward all members of the class, by failing to: (a) adequately test the digestibility of the Pur Luv Treats prior to distributing and selling them; and (b) reformulate the Pur Luv Treats even after Sergeant's became aware of numerous consumer and veterinarian complaints of dogs experiencing digestibility and vomiting problems after consuming the Pur Luv Treats. Injunctive relief on a classwide basis is warranted here.

## IV. The Classes Satisfy Rule 23(b)(3).

Plaintiffs seek to certify the classes under Rule 23(b)(3), which provides for class actions when: (a) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

A.     **Common Issues Predominate Over
       Questions Affecting Individual Class Members.**

Rule 23(b)(3)'s predominance requirement "is satisfied when 'common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication.'" *Porter v. Pipefitters Ass'n Local Union 597*, 208 F. Supp. 3d 894, 911 (N.D. Ill. 2016) (Ellis, J.) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)) (alterations omitted). Predominance is a qualitative concept, rather than quantitative. *Porter*, 208 F. Supp. 3d at 911; *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("predominance requires a qualitative assessment . . . it is not bean counting"). Plaintiffs meet the predominance requirement "by using common evidence to prove the class members' claims." *Porter*, 208 F. Supp. 3d at 911; *Messner*, 669 F.3d at 818 (holding plaintiffs' burden at class certification stage is to demonstrate the claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members") (quotation and emphasis omitted).

1.     **Evidence Common To The Class Will Prove
       Defendant's Liability For Plaintiffs' Breach Of Warranty Claims.**

Plaintiffs assert, on behalf of the National Class, claims for breach of implied warranty (Count I), breach of express warranty (Count II), and violations of the Magnuson-Moss Warranty Act (Count III). As this Court has recognized, Plaintiffs' warranty claims "are governed by the law of Plaintiffs' home states, as that is where they purchased the Pur Luv products and where they were injured." (March 15, 2016, Opinion And Order, Dkt. No. 52 p. 6.) Consistent therewith, the warranty claims of the National Class are governed by the substantive laws of California (home state of Plaintiff Freiha), Illinois (home state of Plaintiffs Bietsch and Pfortmiller), and Ohio (home state of Plaintiff Manner). These laws are materially identical in

that: (a) reliance is not required; and (b) a consumer need not provide pre-suit notice to a manufacturer such as Defendant when seeking to recover damages caused by a defective product. Accordingly, Plaintiffs will prove the National Class's warranty claims using evidence that is common to the class, such that predominance is satisfied.

### a. Plaintiffs Will Prove The Existence, Scope And Breach Of Defendant's Warranties Using Common Evidence.

Plaintiffs will demonstrate the existence of both an implied and express warranty by submitting evidence of Defendant's statements on the Pur Luv Treats' packaging and labels. By virtue of the statements' presence on the Pur Luv Treats' packaging, every purchaser of the treats—and, hence, *every member of the National Class*—was necessarily presented with these statements. Hence, the evidence proving the existence and scope of Defendant's implied and express warranties is common to the class, rather than individual to the class's members. *Pella II*, 606 F.3d at 394 (holding that predominance was satisfied because questions regarding the scope of Defendant's warranty was "the same for all class members").

Plaintiffs will also prove the breach of those warranties using evidence common to the class. Defendant's warranties regarding the safety, nutrition, and wholesomeness of the Pur Luv Treats were breached because at the time the Pur Luv Treats left Defendant's factory, they were defective, unsafe, and unfit for canine consumption. As discussed in Section III *supra*, Plaintiffs' liability expert, Dr. Kelly Swanson, performed *in vitro* disappearance testing of the Pur Luv Grande Bones Treats to simulate how the treats are digested by dogs. (Ex. 1, Swanson Report p. 1.) Dr. Swanson will testify how, at the end of that test, "much of the red-colored core of the treat remained." (*Id.* p. 2.) On that basis, Dr. Swanson will testify how "The low gastric disappearance and only moderate small intestinal disappearance calls into question the safety of the product tested, with the potential for choking or gastrointestinal blockage if large pieces are

consumed." (*Id.* p. 2.) Dr. Swanson will also testify how consumers' repeated and uniform reports of dogs exhibiting digestibility and vomiting problems after consuming the Pur Luv Treats demonstrate a high likelihood that "there is a digestibility problem" with the Pur Luv Treats. Further, Sergeant's own documents contain numerous findings from veterinarians that the treat has caused problems in dogs they have examined, *supra* pp. 3-4. This evidence—which is common to the entire National Class—will demonstrate that the Pur Luv Treats are defective and, thus, Defendant breached the warranties made in regards to the Pur Luv Treats. *Butler*, 727 F.3d at 801-02 (holding that predominance was satisfied where "There is a single, central, common issue of liability; whether the [defendant's product] was defective"); *Pella II*, 606 F.3d at 394 (holding that predominance was satisfied where the central question of whether the defendant's products "suffered from an inherent defect when they left the factory" was "the same for all class members"); *see also Garner*, 184 F.R.D. at 601-03 (holding that predominance was satisfied and certifying nationwide class for breach of express warranty claim).

**b.     Proving Proximate Cause For**
**The National Class's Warranty Claims**
**Does Not Require Individualized Proof Of Reliance.**

To prove the National Class's warranty claims, Plaintiffs will demonstrate that the defective nature of the Pur Luv Treats proximately caused harm to Plaintiffs and the members of the National Class. Critically, Plaintiffs do ***not*** need to prove that any individual class members *relied* on Defendant's warranties in order to establish breach of warranty claims under California, Illinois, and Ohio law. California does not require proof of reliance for breach of express warranty and implied warranty of merchantability claims. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. Ct. App. 2010) (holding that "reliance plays no role" in breach of express warranty claim); *Guttman v. La Tapatia Tortilleria, Inc.*, Case No. 15-cv-

02042-SI, 2015 WL 7283024, at *4 n.2 (N.D. Cal. Nov. 18, 2015) (holding that breach of express and implied warranty claims do not require proof of reliance) (relying on *Weinstat*). As this Court acknowledged in a prior opinion in this case, Illinois does not require a plaintiff to offer affirmative proof of reliance in order to assert a breach of warranty claim. (March 15, 2016, Opinion And Order, Dkt No. 52 pp. 10-11 (rejecting Defendant's argument that Illinois warranty law contains "an added reliance-type element that Plaintiffs must plead") (collecting cases).) Likewise, Ohio law does not require a plaintiff to prove reliance for breach of warranty claims. *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods. Inc.*, No. 2:02-cv-1288, 2007 WL 894833, at *16 n.16 (S.D. Ohio Mar. 22, 2007) ("Under Ohio law, reliance is not a formal element of a claim for breach of express warranty") (citing *Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App. 3d 594, 596 (Ohio Ct. App. 2003)).

Because there is no reliance requirement for Plaintiffs' breach of warranty claims, all Plaintiffs must prove to demonstrate proximate cause is that class members: (1) paid for a Pur Luv Treat that was supposed to be safe, nutritious, and wholesome for dogs to consume; and (2) the Pur Luv Treat was, in fact, *not* safe, nutritious or wholesome because the product posed an unreasonable risk of digestibility and vomiting problems to dogs that consumed the treat. Such an inquiry is susceptible to common proof, and satisfies predominance. *Garner*, 184 F.R.D. at 602 ("if Plaintiffs paid money for a 'wax' but instead received a worthless 'non-wax' product, then issues of proximate cause would be relatively simple to resolve on a classwide basis").

### c. Common Proof Will Establish That Defendant Was On Notice Of The Treats' Defect.

Defendant was on notice of the Pur Luv Treats' defect, and Plaintiffs will establish that fact by using evidence that is common to the class—namely, Defendant's internal records containing consumer complaints of dogs experiencing digestibility problems after the dogs were

fed the treats. Under California and Ohio law, individual consumers are not required to provide notice of a defect to a manufacturer in order to recover damages from the manufacturer for breach of warranty. *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 950-51 (C.D. Cal. 2012) ("under California law, a consumer need not provide notice to a manufacturer before filing suit against them"); *Galoski v. Stanley Black & Decker, Inc.*, No. 1:14 CV 553, 2015 WL 5093443, at *6-7 (N.D. Ohio Aug. 28, 2015) (holding that pre-suit notice to a manufacturer was not necessary under Ohio law where "Plaintiff is a private consumer and not a commercial buyer, and where there is a possibility that Defendant is alleged to have been aware of the defect long before the lawsuit was ever filed"). Under Illinois law, as this Court has already recognized, "Plaintiffs may be excused from the notice requirement" if "Sergeant's had actual knowledge of the specific product's defect…." (March 15, 2016, Opinion And Order, Dkt. No. 52 p. 15.)

Plaintiffs will establish that Sergeant's had actual knowledge of the defective nature of the Pur Luv Treats. Plaintiffs will present evidence of consumer complaints that dogs were having digestibility and vomiting problems after consuming the Pur Luv Treats. (*See* Ex. 3, SERGEANTS030400 (Defendant's "Adverse Event Database" listing consumer complaints regarding digestibility, obstruction and vomiting problems).) Many of these consumer complaints contained *explicit threats of bringing lawsuits* against Defendant due to the Pur Luv Treats causing digestibility problems in consumers' dogs. (*See id.*) This evidence will establish that Sergeant's was aware that the Pur Luv Treats were defective and that it could expect to be sued—indeed, Sergeant's meticulously followed-up with complaining consumers so as to have the consumers sign releases precluding them from filing lawsuits. This evidence is common to the entire class, and does not require individualized inquiries of whether each class member

provided notice to Sergeant's that the Pur Luv Treats were defective.[6] The National Class should be certified.

### d. Any Purported "Individual" Issues Defendant May Raise Will Not Defeat Predominance.

Defendant will likely attempt to raise purportedly "individualized" inquiries concerning reliance or pre-suit notice, as it did in its prior, failed attempt to strike Plaintiffs' class allegations. As discussed *supra*, individualized issues regarding reliance or pre-suit notice do not exist here because the state laws governing the National Class's claims do not require proof of reliance or pre-suit notice here. Regardless, even if Defendant manages to artificially inflate potential individualized issues, Defendant is free to raise these issues at a later phase of the litigation, after Defendant's liability is appropriately addressed on a class basis. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) (affirming class certification and holding, "As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected") (citing *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 524 (C.D. Cal. 2011) ("If [plaintiff] establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, after the issues that are common have been litigated and resolved")). Plaintiffs' claims rise or fall on the common, predominate issues of whether: (i) the Pur Luv Treats were safe for dogs to consume; and (ii) Defendant misrepresented the safety and wholesomeness of the Pur Luv Treats. No individual issues can outweigh the import of these central issues.

---

[6] Moreover, this Court has already held that Plaintiffs have satisfied the pre-suit notice requirement because Plaintiff Bietsch notified Defendant of his dog's injuries prior to this lawsuit. (March 15, 2016, Opinion And Order, Dkt. No. 52, pp. 15-16.)

2. **The Consumer Protection Statutes Of The Consumer Fraud Multistate Class States Are Materially Identical.**

Plaintiffs seek to certify a Consumer Fraud Multistate Class for claims arising under the consumer protection statutes of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, and Washington (Count IV). There are no outcome determinative differences between the laws of the eleven states that Plaintiffs seek to certify as a class here—all have consumer protection laws that are materially identical to the Illinois Consumer Fraud and Deceptive Business Practices Act. (*See* Ex. 17 (reciting the relevant consumer protections laws in each of the eleven Multi-State Class states).) Thus, the Consumer Fraud Multistate Class satisfies predominance and should be certified. *Pella I*, 257 F.R.D. at 484 n.12 (granting class certification where "The consumer fraud laws of the six states—California, Florida, Illinois, Michigan, New Jersey and New York—have nearly identical elements"), *aff'd* 606 F.3d 391 (7th Cir. 2010); *Mednick v. Precor, Inc.*, --- F.R.D. ---, No. 14 C 3624, 2017 WL 1021994, at *17 (N.D. Ill. Mar. 16, 2017) (granting class certification of multi-state consumer fraud class and holding, "the consumer protection statutes of California, Illinois, Missouri, New York, and New Jersey share sufficient common characteristics"); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015) (certifying multi-state consumer fraud class for states including California, Illinois, New Jersey, and New York); *Mullins v. Direct Digital, LLC*, Civil Action No. 13 CV 1829, 2014 WL 5461903, at *1, 4 (N.D. Ill. Sept. 30, 2014) (certifying multi-state consumer fraud class that included "all consumers in Illinois and states with similar laws"), *aff'd* 795 F.3d 654 (7th Cir. 2015).

None of the state consumer protection laws contained within the Consumer Fraud Multistate Class require a showing of reliance. (Ex. 17 (setting forth the relevant state laws

regarding whether reliance is required for a misrepresentation).)[7] Further, under the laws of the Consumer Fraud Multistate Class states, causation is satisfied where the misrepresentation is material to a reasonable consumer. (*Id.* (setting forth relevant state law regarding whether materiality of the misrepresentation satisfies causation).) Thus, common proof will establish Defendant's liability under the state consumer protection laws asserted by the Consumer Fraud Multistate Class.

In particular, Plaintiffs will prove that Sergeant's mispresented the nature of the Pur Luv Treats by using the same common evidence discussed in Sections III and IV *supra*—e.g., (i) Sergeant's used uniform labels with the same standard representations and omissions for the Pur Luv Treat; (ii) Sergeant's failed to properly test the Pur Luv Treats for digestibility issues, even after Sergeant's was on notice that dogs were having trouble digesting the treat; (iii) Sergeant's discussed internally the perceptions of the treats and opted to take action to minimize the perception (but not the safety) issues; and (iv) testimony by Dr. Swanson establishing that (a) *in vitro* disappearance testing of the Pur Luv Treats raises significant concerns regarding the treats' digestibility and (b) the Pur Luv Treats pose a substantial risk of digestibility, obstruction and vomiting problems for dogs.

In sum, common proof will establish Sergeant's liability under the materially identical consumer protection statutes asserted by the Consumer Fraud Multistate Class. The Consumer Fraud Multistate Class should be certified.

---

[7] California does require some form of reliance, but *only by the named plaintiff*. Ex. 17; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009).

### 3.    Damages Are Common To Every Member Of The Classes.

Class certification is appropriate where there is a classwide method for proving damages. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ("We must see if there is a classwide method for proving damages"); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 257-58 (S.D. Ill. 2015) ("If damages are capable of measurement on a classwide basis, questions of individual damage calculations will not overwhelm questions common to the class"); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 415 (S.D. Ind. 2001) ("The final issue with regard to predominance is whether the question of damages is subject to common proof").

Plaintiffs seek a full refund of the product price for the Pur Luv Treats on the basis that, because the Pur Luv Treats pose a substantial risk of injury or death to dogs, the Pur Luv Treats are economically worthless and any consumer who purchased Pur Luv Treats has sustained economic damages in the amount of the purchase price for the Pur Luv Treats. Plaintiffs' damages expert, Joseph J. Egan ("Mr. Egan"), has established that "common methods and formulas can be used to measure damages on a class-wide basis." (Ex. 15, Egan Report p. 4.) In particular, Mr. Egan illustrates how the "Retail Method" of estimating damages—which involves multiplying the number of Pur Luv Treats sold by the average retail price—"can be used to estimate to a reasonable degree of economic certainty the aggregate damages for the proposed National Class." (*Id.* p. 6.) This is a reliable method of calculating damages, and is consistent with Plaintiffs' theory that purchasers of the Pur Luv Treats are entitled to a full refund—a theory that federal courts in this circuit and throughout the country accept as a proper basis of classwide damages. *Lambert v. Nutraceutical Corp.*, --- F.3d ---, No. 15-56423, 2017 WL 4081089, at *10 (9th Cir. Sept. 15, 2017) (reversing decertification of class where the plaintiff proposed a "full refund model [that] measures damages by presuming a full refund for each

customer, on the basis that the product has no or only a de minimis value"); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 523-24 (6th Cir. 2015) (affirming class certification where "A full refund for each class member is appropriate" and holding, "Whether purchasers were nevertheless satisfied with [the product] does not affect the propriety of a full-refund damages model"); *Mullins*, 2014 WL 5461903, at *3 (certifying class and accepting Plaintiffs' "full refund" theory of damages); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 258-59 (S.D. Ill. 2015) (certifying class and accepting plaintiffs' class-wide damages model based on a full refund). Class members' damages need not be identical. *See Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined . . . the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.").

### B. A Class Action Is The Superior Method Of Adjudication.

A class action is proper when it is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). A class action is superior here because there are tens of thousands of class members who bought the Pur Luv Treats based on Defendant's uniform representations regarding the safety, nutrition and wholesomeness of the treats. Where, as here, there are common issues and the accuracy of the resolution of those issues "is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues on one fell swoop…." *Pella II*, 606 F.3d at 394 (quotations and citations omitted). As the Seventh Circuit has explained:

> [T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30….

The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30…. The present case is less extreme: tens of thousands of class members, each seeking damages of a few hundred dollars. But few members of such a class, considering the costs and distraction of litigation, would think so meager a prospect made suing worthwhile.

*Butler*, 727 F.3d at 801 (first ellipsis and emphasis original). A class action is superior here. The

classes should be certified.

## CONCLUSION

For the foregoing reasons, Plaintiffs Ryan Bietsch, Michael Pfortmiller, Selim Freiha,

and Justin Manner respectfully request that the Court: (a) grant Plaintiffs' Motion For Class

Certification; (b) certify the National Class and the Consumer Fraud Multistate Class; (c) appoint

Siprut PC as class counsel; and (d) grant such other and further relief as the Court deems proper.


Dated:  September 21, 2017                                Respectfully submitted,

                                                         */s/ Todd L. McLawhorn*

                                                         Joseph J. Siprut
                                                         *jsiprut@siprut.com*
                                                         Richard L. Miller II
                                                         *rmiller@siprut.com*
                                                         Todd L. McLawhorn
                                                         *tmclawhorn@siprut.com*
                                                         Richard S. Wilson
                                                         *rwilson@siprut.com*
                                                         **SIPRUT PC**
                                                         17 North State Street
                                                         Suite 1600
                                                         Chicago, Illinois 60602
                                                         Phone: 312.236.0000
                                                         Fax: 312.878.1342

                                                         ***Counsel For Plaintiffs***
                                                         ***And The Proposed Putative Classes***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Memorandum In Support Of Plaintiffs' Motion For Class Certification** was filed this 21st day of September 2017 via the electronic filing system for the Northern District of Illinois, which will automatically serve all counsel of record.

*/s/ Richard S. Wilson*