# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| RYAN BIETSCH, MICHAEL PFORTMILLER, JUSTIN MANNER, and SELIM FREIHA, individually and on behalf of all others similarly situated, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
|  | ) | No. 15 C 5432 |
| v. | ) |  |
|  | ) | Judge Sara L. Ellis |
| SERGEANT'S PET CARE PRODUCTS, INC., a Michigan corporation, | ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

After their dogs ate Pur Luv pet treats (the "Pur Luv Treats") and became ill, Plaintiffs Ryan Bietsch, Selim Freiha, Justin Manner, and Michael Pfortmiller filed this putative class action against the Pur Luv Treats' manufacturer, Defendant Sergeant's Pet Care Products, Inc. ("Sergeant's"). Plaintiffs bring claims for breach of implied and express warranties under state law and the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301 *et seq*., and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*., and 10 other states' consumer fraud laws. Plaintiffs have filed a motion to certify a national class of all purchasers of the Pur Luv Treats based on their warranty claims, a multi-state class based on their consumer fraud claims, and, alternatively, state classes based on their consumer fraud claims. Plaintiffs move to certify these classes under both Federal Rule of Civil Procedure 23(b)(2) seeking a mandatory injunction requiring Sergeant's to recall and reformulate the Pur Luv Treats, and Federal Rule of Civil Procedure 23(b)(3), seeking damages in the form of a full refund of the Pur Luv Treat's purchase price [91]. Plaintiffs also

move to strike portions of Sergeant's expert Dr. Jörg Steiner's testimony [127]. Sergeant's moves to strike Plaintiffs' expert Dr. Kelly Swanson's testimony in its entirety [101].

Because the Court finds that Plaintiffs cannot show irreparable harm or likelihood of future harm, they do not properly present a claim for Rule 23(b)(2) class certification. And because Plaintiffs are not able to prove that the Pur Luv Treats are unsafe through evidence common to the entire class, the Court finds that they have not carried their burden with respect to Rule 23(b)(3) certification either. Thus, the Court denies the motion for class certification.

The Court also denies the motion to strike Dr. Swanson's testimony because his testimony satisfies the requirements under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Federal Rule of Civil Procedure 702. The Court denies in part and grants in part the motion to strike the testimony of Dr. Steiner. The Court strikes Dr. Steiner's testimony regarding what products are properly part of this suit because that is a legal opinion Dr. Steiner is not qualified to make and strikes Dr. Steiner's opinion on the statistical rate of adverse events. The Court denies the motion with regard to Dr. Steiner's remaining opinions, but Plaintiffs may re-raise, at a later date, their objection to Dr. Steiner's opinions on the causation of illnesses experienced by dogs identified in the Adverse Event Database.

## BACKGROUND

### I. Product Background and Adverse Events

Sergeant's manufactures, sells, and markets Pur Luv Grande Bones and Pur Luv Mini Bones (the "Pur Luv Treats") as semi-soft chew treats for dogs. Sergeant's began selling the Pur Luv Treats in 2010. Sergeant's packaging and labeling of the Pur Luv Treats uniformly proclaim the treats' "nutritious ingredients" and state that the treats' "essential nutrients" are recognized by AAFCO Dog Food Nutrient Profiles. The packaging and labeling also states that there is a

2

"guaranteed analysis" of each nutrient in the Pur Luv Treats. Doc. 75 ¶¶ 41–47. In general, Sergeant's represents the treats as nutritious, safe and wholesome.

Between the initial release of the Pur Luv Treats to the market and the end of 2016, Sergeant's reported selling approximately 6.6 million packages of the Grande Bones and 4.2 million packages of the Mini Bones. According to Sergeant's own "Adverse Events Database," since February 2011, hundreds of consumers have complained about the Pur Luv Treats. Between their market introduction and the beginning of 2017, Sergeant's received and recorded 376 consumer complaints from 278 customers. Of these complaints, 210 involved the dog vomiting the treat with no other reported complications. Thirty-six complaints involved an obstruction and seven other complaints reported severe complications that led to hospitalization, surgery, or pet death. For many of the dogs that received treatment from a veterinarian, Sergeant's received documentation of the treatment. The documentation ranged from the veterinarian ascribing 100% certainty to the Pur Luv Treat as the cause of the ailment to veterinarians who did not believe it likely that the treat caused the dog's issue. Several dogs in these records are reported as having eaten the Pur Luv Treats over several months with no issue at all before they experienced the reported adverse event. In some of these cases, Sergeant's resolved the complaints by providing compensation to customers who provided proper documentation from their veterinarian regarding their adverse event. Sergeant's required these individuals to sign a release waiving their rights to sue Sergeant's over the Pur Luv Treats and agreeing to keep the settlement confidential.

Customers also complained about the Pur Luv Treats on the customer review section of the products' Amazon.com pages. One customer also organized a petition on Change.org asking Sergeant's to recall the Pur Luv Treats. Many people commented on the petition sharing stories

of their dogs having issues with the treats.  It is not clear if these customers are the same customers who complained directly to Sergeant's.

Plaintiffs assert that the Pur Luv Treats are defective and categorically unsafe for dogs to consume because they do not break down completely in dogs' stomachs and intestinal tracts. Plaintiffs assert that this defect caused these adverse events described above.  Plaintiffs retained Dr. Kelly Swanson of the University of Illinois Department of Animal Sciences as an expert witness on the issue of digestibility.  Dr. Swanson performed an *in vitro*, that is lab based, disappearance testing of the Pur Luv Grande Bones and concluded that they had relatively low disappearance rates in simulations of canine stomach and small intestine conditions.  Dr. Kelly expressed concern about the safety of the treats related to choking and gastrointestinal blockage.

## II. Proposed Classes

Plaintiffs seek to certify two classes of consumers.  The first class is a national class defined as: "All persons in the United States who purchased Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present."  The second class is a consumer fraud multistate class defined as: "All persons residing in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, and Washington who purchased Pur Luv Grande Bones and/or Mini Bones Treats within the Class Period of June 19, 2010, through the present."  In the alternative to the multistate class, the Plaintiffs seek to certify state consumer fraud classes in Illinois, California, and Ohio.

The class plaintiffs are Ryan Bietsch, Selim Freiha, Justin Manner, and Michael Pfortmiller.  Bietsch is a citizen of Illinois.  His dog died from complications related to a bowel obstruction following eating a Pur Luv Treat.  Pfortmiller is a citizen of Illinois.  His dog ate Pur Luv Treats over two weeks without incident.  His dog subsequently became ill, including

vomiting, constipation, lack of appetite, and lethargy. Pfortmiller's veterinarian diagnosed

intestinal irritation and treated the dog with IV fluids and anti-vomiting medication. The dog

improved and passed two small pieces of what appeared to be a Pur Luv Treat. Freiha is a

citizen of California. Her dog vomited red chunks of what appeared to parts of a Pur Luv Treat a

few days after consuming it. Her dog did not go to the veterinarian or have any other symptoms.

Manner is a citizen of Ohio. His dog ate Pur Luv Treats and a few weeks later had diarrhea,

lethargy, loss of appetite, and loss of thirst. The dog also vomited large chunks of the treats.

Manner's veterinarian did not diagnose an obstruction, but found the dog suffered from acute

gastritis with no identifiable cause.

## LEGAL STANDARD

### I. Expert Opinion Testimony

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence

702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.

Ed. 2d 469 (1993). *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011).

Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training,

or education may testify in the form of opinion or otherwise provided that "(a) the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the

evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably

applied the principles and methods to the facts of the case." Fed. R. Evid. 702. To admit expert

testimony under this rule, the Court must determine that (1) the witness is qualified, (2) the

expert's methodology is reliable, and (3) the testimony will assist the trier of fact to understand

the evidence or to determine a fact in issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th

Cir. 2010). The Rule 702 inquiry "is a flexible one," however. *Daubert*, 509 U.S. at 594.

"Determinations on admissibility should not supplant the adversarial process; 'shaky' expert

testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v.*

*McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The proponent of the testimony bears the burden of

proving that the proffered testimony meets these requirements, and the Seventh Circuit grants the

district court "wide latitude in performing its gate-keeping function." *Bielskis*, 663 F.3d at 894.

## II.     Class Certification

Class certification is appropriate where a plaintiff can meet the four requirements of Rule

23(a)—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P.

23(a). Additionally, a plaintiff must also satisfy one of the three subsections of Rule 23(b). Fed.

R. Civ. P. 23(b); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, Plaintiffs

seek certification under Rules 23(b)(2) and (b)(3). Rule 23(b)(2) requires a finding that "the

party opposing the class has acted or refused to act on grounds that apply generally to the class,

so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires a finding that "questions of

law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit

requirement of Rule 23, the party seeking certification must demonstrate that the class members

are identifiable. *Oshana*, 472 F.3d at 513.

The Court has broad discretion in determining whether a proposed class should be

certified. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification

bears the burden of demonstrating that certification is proper by a preponderance of the evidence.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). But "[i]n conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (merits questions are to be considered only to the extent relevant to determining if Rule 23's prerequisites are met).

## ANALYSIS

### I.     Motion to Exclude Plaintiffs' Expert Dr. Kelly Swanson

Sergeant's moves to exclude Dr. Swanson's expert opinions. Sergeant's argues that Dr. Swanson is unqualified, that his opinions will not be helpful to the jury, that his opinions are based on unreliable methodology, and that his opinions are based on insufficient facts and data.

Plaintiffs seek to have Dr. Swanson testify that "(1) the Pur Luv pet treats exhibit low digestibility characteristics; (2) Sergeant's failed to perform adequate testing to determine whether treats were sufficiently safe or digestible prior to marketing and selling the treats to consumers; and (3) due to the risk of dogs experiencing difficulty digesting treats, it would be prudent for Sergeant's to reformulate the treats." Doc. 115 at 5.

#### A.     Dr. Swanson's Qualifications

For his testimony to be admissible, Dr. Swanson must be qualified as an expert to opine on the subject matter of his testimony. *See Gayton*, 593 F.3d at 616 ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's

testimony."). Dr. Swanson is a professor in the Department of Animal Sciences, Division of Nutritional Sciences and Department of Veterinary Clinical Medicine at the University of Illinois. He has published over 140 peer-reviewed papers, six book chapters, and over 220 abstracts presented at scientific meetings. He oversees a lab that is active in comparative nutrition and nutrigenomics. He provides consulting services to companies in the pet food industry relating to food nutrition and safety. Dr. Swanson is not a veterinarian but teaches a course in veterinarian medicine.

Dr. Swanson's expert opinion is related to the rate of digestion of the Pur Luv treats and how that relates to potential hazards to dogs that consume the treats. This opinion falls squarely within his professional experience. Therefore, Dr. Swanson is adequately qualified to opine on the digestibility and testing methods of dog treats.

### B.    Reliability of Dr. Swanson's Methodology

Sergeant's argues that Dr. Swanson's method for testing digestibility is not reliable. To evaluate reliability, *Daubert* provides a non-exhaustive list of criteria to consider: "(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community. *Gayton*, 593 F.3d at 616 (citing *Daubert*, 509 U.S. at 593–94). The Court may also consider the expert's experience and training in the subject area. *Id.*

Dr. Swanson states in his Expert Report that the *in vitro* disappearance test he performed on the Pur Luv Grande Bone is a modified version of a commonly used method that was originally published in the Nutritional Research Review in 1991. The modification was done to make the method usable with large samples such as the Grande Bone. His laboratory has used this modified method to test the disappearance of treat products over the past decade for

numerous pet food companies. Exhibit A to the report includes the composition of the *in vitro* solution used in the test as well as the procedures followed in the test. Additionally, it includes when and how data were recorded during the test and what those data were.

Dr. Swanson testified that he has published two articles on pet treat disappearance rates and a few other articles using the *in vitro* test for digestion that were not pet treat specific. Dr. Swanson testified that these articles were subject to peer review. Dr. Swanson also testified that leading pet food companies use this modified version of the Nutritional Research Review method in their product testing.

Sergeant's asserts that Dr. Swanson's method is not reliable because he tested the treats without breaking them into smaller pieces to simulate chewing, and he did not account for gastric contractions. These critiques go to the weight of the opinion, not the reliability of the method. As Dr. Swanson himself testified, no *in vitro* test can perfectly simulate what occurs during digestion of a treat, but that does not render *in vitro* tests *per se* invalid. This method is both based on a long-accepted peer reviewed methodology and has been subjected to peer review itself. The method is capable of being replicated and tested itself. It is used widely in the industry to evaluate digestibility of dog treats. Therefore, despite the potential shortcomings Sergeant's identified, the method is a scientifically valid one and Sergeant's can address its potential blind spots on cross-examination.

### C. Helpfulness of Dr. Swanson's Opinion to Trier of Fact

Sergeant's argues that Dr. Swanson's opinion will not assist the jury because his contention that the risks of choking or blockage are increased when a dog swallows a whole Grande Bone are within the understanding of an average lay person. Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in

issue,'" which "goes primarily to relevance." *Daubert*, 509 U.S. at 591 (citation omitted).

Expert testimony is relevant if it helps the jury determine any fact at issue in the case.

*Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014).

 Sergeant's characterization of Dr. Swanson's opinion too narrowly construes the conclusions of his Expert Report. Dr. Swanson states, "The low gastric disappearance and only moderate small intestinal disappearance calls into question the safety of the product tested, with the potential for choking or gastrointestinal blockage especially if large pieces are consumed." Doc. 102 Ex. 3 at 2. Lay jurors do not have personal experience understanding the risks associated with various rates of intestinal disappearance or factors that may contribute to disappearance rates. Dr. Swanson's testing and his opinion of those test results will aid the jury in determining whether the Pur Luv treats are safe for dogs to consume, which is central to Plaintiffs' claims in this case. As discussed below in the class certification section, Dr. Swanson's opinions are not sufficient to make a prima facie case on the safety issue, but this does not render them unhelpful.

### D. Sufficiency of Dr. Swanson's Facts and Data

 Sergeant's argues that the facts Dr. Swanson relied upon in formulating his Expert Report are not sufficient to support his conclusions. Specifically, he argues that Dr. Swanson did not collect data regarding digestion rates when the Grande Bones are consumed in two or more parts. Also, Dr. Swanson did not conduct any testing in live dogs. Moreover, Dr. Swanson also did not talk to pet owners, consumers, or Plaintiffs, and he did not evaluate the alleged injuries in this case. However, this argument fails for two reasons. First, although an expert's testimony must be based on "sufficient facts or data," Fed. R. Evid. 702, it is the jury's role to determine the "soundness of the factual underpinnings of the expert's analysis and the correctness of the

expert's conclusions based on that analysis," *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Sergeant's will be able to direct the jury to the relevant issues that Dr. Swanson's analysis failed to consider or inappropriately or inaccurately considered. The jury may then weigh Dr. Swanson's opinion according to all the evidence. Second, Sergeant's once again misconstrues Dr. Swanson's opinion. He opines on the digestibility of the Pur Luv Treats and how that digestibility might impact the safety of the treat. He does not need to speak to lay pet owners or Plaintiffs about their specific experiences to render this opinion. He will likely be called to explain why his opinion should be given much weight when he did not account for dogs chewing the treats before swallowing, but this goes to the weight of the testimony, not its admissibility. Thus, the facts and data sufficiently support his opinion for admissibility purposes, and the Court denies Sergeant's motion to exclude Dr. Swanson.

## II.     Motion to Exclude Dr. Jörg Steiner's Expert Opinion and Testimony

Plaintiffs move to exclude portions of Dr. Steiner's expert opinion and testimony, arguing that (1) Dr. Steiner's proposed testimony regarding the pre-market palatability testing Sergeant's conducted is improperly based on testimony from Mark Levin, Sergeant's former Vice President of Technical Affairs, (2) Dr. Steiner relies upon incomplete data for his opinions regarding Sergeant's Adverse Events Database, (3) Dr. Steiner lacks sufficient data to opine on the cause of illness in one of the Plaintiffs' dogs, and (4) Dr. Steiner offers an improper legal opinion.

### A.     Dr. Steiner's Qualifications

Plaintiffs seek to exclude Dr. Steiner from offering a variety of opinions related to adverse medical events experienced by dogs that ate Pur Luv treats, including Plaintiffs' dogs. Additionally, Plaintiffs seek to bar Dr. Steiner from opining on what specific dog treats should be part of this law suit. For his testimony to be admissible, Dr. Steiner must be qualified as an

expert to opine on the subject matter of his testimony.  *See Gayton*, 593 F.3d at 616 ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.").

Dr. Steiner has a degree in veterinary medicine, completed an internship in small animal medicine and surgery, completed a residency in small animal internal medicine, and was board-certified as a small animal internist in 1996.  Dr. Steiner also holds a PhD for work on canine digestive lipases and their use in diagnosing gastrointestinal disorders in dogs.  Since 2000, he has held various positions at Texas A&M, including Professor of Small Animal Internal Medicine, Director of the Gastrointestinal Laboratory, and Chair in Small Animal Gastroenterology and Nutrition.  He has conducted research on small animal gastroenterology and has authored and co-authored over 250 peer-reviewed articles, 80 book chapters, and 370 research abstracts.  Dr. Steiner's education and professional experience more than adequately qualify him to opine on topics related to digestion of dog treats and potential complications associated with dog gastrointestinal tracts.

## B.     Dr. Steiner's Testimony Regarding Pre-Market Testing

Plaintiffs seeks to bar Dr. Steiner from testifying regarding pre-market palatability trials and informal product testing by Sergeant's employees.  Plaintiffs argue that this testimony is nothing more than hearsay testimony under the guise of expert testimony and it would not be helpful to the jury.  Sergeant's argues that this testimony is admissible because it is part of the foundation of Dr. Steiner's opinion that there are no widespread and common safety concerns with the Pur Luv Treats.

An expert may base an opinion on any facts that "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Dr. Steiner's opinion only relied upon the pre-market testing as one data point in support of his conclusion that there was no evidence of a widespread safety concern with the treats. It was not the only information he consulted to reach this conclusion and he did not simply parrot the results of the study back as his expert opinion. His opinion was, essentially, that in reviewing the pre-market testing Mark Levin conducted in conjunction with trials Summit Ridge Farms conducted, palatability testing, and experiential reports from Sergeant's own employees who fed the treat to their pets, there was no evidence of a widespread safety issue. Plaintiffs are free to cross-examine him on why these data may not be sufficient to support his conclusion or what gaps his analysis may have, but it is not unreasonable for an expert to review this data as part of his analysis on the safety of the product.

### C. Testimony on the Adverse Events Database

Plaintiffs seek to bar Dr. Steiner's opinions based on his review of the Adverse Events Database, arguing that his opinions lack sufficient basis and he lacks the requisite qualifications to conduct this review. Dr. Steiner derived three groups of opinions from the database. He opines on the rate of adverse event reports, classifies the events in the database as mild, moderate, or severe, and opines on the causes behind some of the adverse events.

Plaintiffs argue that Dr. Steiner is not qualified to provide statistical evidence about the adverse event rates. Sergeant's does not respond to this argument. In the report he states that the percentage of adverse event reports is "very small." Doc. 128 Ex. 1 at 14. While he does present his methods of calculation, nowhere does he explain why he is qualified to opine on adverse event report rates. He does not explain how adverse event report rates correlate to actual

incidence rates of adverse events in the field. He does not explain what the threshold for high or low rates is or how that is calculated. It is Sergeant's burden to show that Dr. Steiner is qualified. *Bielskis*, 663 F.3d at 894. It has not attempted to carry the burden on this issue; therefore, the Court finds Dr. Steiner is not qualified as an expert to opine on adverse event report rates.

With regard to the classification of the adverse event reports, Dr. Steiner is qualified. Dr. Steiner is a veterinarian, and thus qualified to opine on the relative severity of various symptoms experienced by dogs. Based on the symptoms reported in the database, Dr. Steiner grouped the adverse event reports into three categories: mild, moderate, and severe. Dr. Steiner stated his criteria for each group in his report; thus, his method is subject to evaluation and reproduction. Plaintiffs certainly could quibble with where he has drawn the line, but that is a question of weight of the evidence, not admissibility.

The fact that there is no extant paper or accepted method for grouping adverse events by severity also does not doom his opinion on this matter. *Daubert* does not require expert opinions to be based on accepted theories—they may be admissible if other indicia of reliability are satisfied. *Daubert*, 509 U.S. at 593–94. In this case, Dr. Steiner's method of classification can be replicated and tested and his qualifications to opine on the relative severity of canine illness are well established. *See Gayton*, 593 F.3d at 616 (courts may consider the expert's expertise and training the subject area when determining reliability). As noted above, Plaintiffs may raise their issues with his data and method on cross-examination, but this does not render his opinion on the matter inadmissible.

Finally, Plaintiffs argue that Dr. Steiner's opinions on the cause of some of the events reported in the database are not supported by sufficient data to be reliable. With the exception of

the named Plaintiffs' dogs, Dr. Steiner based his opinions on the causation of other dogs' illnesses only on information contained in the Adverse Event Database. The database includes only reports customers made to Sergeant's about the adverse events and does not include complete veterinary records beyond brief summaries and excerpts. In cases where Sergeant's received the complete veterinary records from customers, those records are stored outside of the database.

The quality and substance of the entries Dr. Steiner reviewed and opined upon varies considerably. Concluding whether Dr. Steiner's opinions on the cause each dog's illness requires an individualized assessment of these opinions, and neither party has provided such analysis in their brief. However, the Court need not rule on this portion of Plaintiff's motion at this time because the Court does not rely on it for its decision on class certification. *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (District court is only required to rule on admission of expert testimony prior to class certification where that testimony is critical to class certification decision). Therefore, the Court denies the motion to exclude Dr. Steiner's testimony with regard to his causation opinions, without prejudice to Plaintiffs refiling it at a later date.

### E. Testimony Regarding Why Pet Owners Feed Treats to Dogs

Plaintiffs also ask the Court to bar Dr. Steiner from testifying that "the Pur Luv treats are in fact designed to be chewed and broken down slowly during the chewing process, meaning soaking them in fluid alone would not dissolve them as would be the case for [softer treats]. This is by design, and as requested by the pet owner." Doc. 128 Ex. 1 at 7. The basis for this opinion is that it says on the package of Pur Luv Grand Bones that they are "Long-Lasting Chews." Doc. 108-20. Furthermore, Dr. Swanson acknowledges that the Pur Luv Treats are

designed to be long-lasting chews. *See* Doc. 133 Ex. D at 121–22 ("Q: Well, they're intended to be a long-lasting chew, right? A. Correct."). Thus, there is ample evidence in the record to conclude that the Pur Luv Treats are sold as long-lasting chews, and Dr. Steiner reasonably takes that into account in his analysis.

### E. Testimony Regarding Treats Properly in this Case

Dr. Steiner is not qualified to opine on questions of law. *United States v. Diekhoff*, 535 F.3d 611, 619 (7th Cir. 2008) (experts cannot offer opinions that involve legal conclusions). His expert report states, "Furthermore, I find it perplexing that a product, Pur Luv mini bones, is part of this suit when not one of the dogs selected for class certification even received this treat." Doc. 128, Ex. 1 at 30. Whether these treats are properly part of the case is a question of law, and Dr. Steiner may not opine on such topics. Furthermore, he does not appear to offer an opinion on the issue, only stating that he is "perplexed." So, to the extent this is an opinion, it is not a helpful one. Therefore, he may not testify regarding what treats are appropriately part of this case. He may, however, use the lack of any injuries associated with the Pur Luv Mini Bones in support of any of his otherwise appropriately presented opinions.

## III. Class Certification

To certify a class, Plaintiffs must show, by a preponderance of the evidence, that they have satisfied Rule 23(a)'s requirements. *Messner*, 669 F.3d at 811. Plaintiffs must also satisfy one of the Rule 23(b) requirements. Fed. R. Civ. P. 23(b); *Oshana*, 472 F.3d at 513. Plaintiffs seek certification under Rules 23(b)(2) and (b)(3). Certification is only proper if both the requirements of Rule 23(a) and (b) are met. Because the Court finds that common issues of fact do not predominate over the questions affecting only individual members, the Court denies certification of the Rule 23(b)(3) class. And because the Plaintiffs cannot show that an

injunction remedy would provide appropriate or final relief for any of the individual class members, or the class as a whole, the Court denies the motion to certify a Rule 23(b)(2) class.

## A.     Rule 23(b)(3) Class

Plaintiffs seek to certify a nationwide breach of warranty class and a multistate consumer fraud class under Rule 23(b)(3).  Plaintiffs argue that the Pur Luv Treats are defective because they are unsafe for canine consumption and that no reasonable consumer would purchase the Pur Luv Treats knowing this.  As damages, Plaintiffs seek a full refund of the purchase price of all Pur Luv Treats consumers have purchased since they came to market in 2010.

The Plaintiffs' claims all rely upon one central allegation: that the Pur Luv Treats are not safe for dogs to eat.  Plaintiffs' state law warranty claims, MMWA claims, and consumer fraud claims all require proving that Sergeant's made an actionable statement.  The Court previously ruled that Sergeant's representations that the Pur Luv Treats are nutritious, safe, and wholesome are actionable.   Each of these claims also requires proving that the actionable statement is not true.  Plaintiffs argue that these statements are not true because the Pur Luv Treats were "defective, unsafe, and unfit for canine consumption" when they left the Sergeant's factory. Doc. 92 at 17.  Therefore, all of Plaintiffs' claims rely upon Plaintiffs' ability to prove that the Pur Luv Treats are, in fact, "defective, unsafe, and unfit for canine consumption."

To satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs must ultimately be able to prove that the Treats are defective and unsafe through use of "evidence that is common to the class rather than individual to its members."  *Messner*, 669 F.3d at 818 (7th Cir. 2012) (citation omitted) (internal quotation marks omitted).  If each plaintiff will require individualized evidence to make a *prima facie* showing, then predominance is not satisfied.  *Id.* at 815.  It ultimately is Plaintiffs' burden to show that the "products contain an inherent defect that is

substantially certain to result in malfunction during the useful life of the product." *Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159FCDEFB, 2009 WL 2982887, at *10 (E.D. Cal. Sept. 14, 2009) (citation omitted) (internal quotation marks omitted). To succeed on any of Plaintiffs' claims, they must prove that the treats are in fact defective, that is, substantially certain to harm dogs that consume them. At this stage the Court must look at the proposed evidence and determine whether the common evidence is sufficient for Plaintiffs to make out a *prima facie* case. *Id.* at 826. The Court notes that its analysis on this issue overlaps in part with the merits of Plaintiffs' underlying claims. However, there is frequent overlap between the factual and legal issues comprising a plaintiff's cause of action and the rigorous analysis courts must undertake in class certification, and the Court cannot avoid answering questions on class certification simply because they touch on the ultimate merits of the case. *Dukes*, 564 U.S. at 351.

Plaintiffs point to eight sources of proof they will use at trial to prove that the treats are defective. These are:

> (1) the named Plaintiffs' testimony concerning their experiences with the treats, including veterinarian testimony; (2) other putative class members and their experiences with the treats, including veterinarian testimony; (3) Defendant's records detailing hundreds of customer complaints about the safety of the treats; (4) Defendant's records showing Sergeant's did no safety or efficacy testing prior to marketing its treats; (5) Dr. Swanson's testing of the treats showing the treats had low dissolution rates; (6) the Defendant's subsequent testing of the treats following this lawsuit that produced results similar to those of Dr. Swanson; (7) the Defendant's confidentially settling scores of claims made by putative class members who claimed the treats were unsafe; and (8) the Defendant's reformulation of the product to conceal the problem with the treats.

Doc. 111 at 8.

The proposed common evidence is not capable of proving Plaintiffs' *prima facie* case. First, and most importantly, Plaintiffs' own expert, after reviewing much of the evidence above

and conducting his own tests of the Pur Luv Treats, was unwilling to categorically say that the Pur Luv Treats are unsafe. During his deposition, when asked about the safety of the treats, Dr. Swanson stated, "I guess I wouldn't – again I wouldn't put a number on like – I guess I don't classify any of these as safe or unsafe. It's kind of a – it's not black or white. It's a lot of gray area there. I think the risk level is higher than other ones we've tested. To say safe or unsafe is probably difficult to put them all in one or the other categories. Like, you know, all or nothing." Doc. 107, Ex. AA at 193:11–19. Earlier in the same deposition, Dr. Swanson engaged in the following colloquy.

> Q.     Would you agree with me that you would have to look at each dog individually to determine whether or not that dog had difficulty digesting any treat?
> A.     Yeah . . . that's why I don't like to categorize things because it depends on the dog and all the other factors that go along with that.

*Id.* at 155:15–156:1. In his expert report, Dr. Swanson stated that in preparing his report he reviewed "portions of the consumers' experiences about the treats in question [from] Sergeant's . . . consumer affairs database, in a change.org petition, and Amazon product reviews." Doc. 92 Ex. 1 at 6. In discussing the various consumer reports, Dr. Swanson noted that the reports may be unreliable for a variety of reasons and may not "provide a complete picture of the true field experience." *Id.* Dr. Swanson also does not offer any opinion regarding any specific adverse events. After reviewing the consumer complaints, he simply concluded that, "it would be prudent to test these treats for digestibility issues." *Id.* at 6. Thus, Dr. Swanson reviewed the bulk of Plaintiffs' proposed evidence, and based on that evidence he did not feel comfortable concluding that the treats are categorically unsafe. In fact, his expert report recommends "further analysis of the treats" to identify any potential defect, *id.*, and in his

deposition, he clarified that whether a particular treat causes digestibility issues is heavily dependent upon the dog that ate the treat.

Plaintiffs also do not provide the Court with any framework that it can use to determine the point at which a treat is unsafe, merely pointing to anecdotal evidence from largely unidentified consumers and an inconclusive expert report. Even accepting Plaintiffs' assertion that the rate of gastric and intestinal disappearance "calls into question the safety of the [Pur Luv treats], with potential for choking or gastrointestinal blockage especially if large pieces are consumed," Doc. 92 Ex. 1 at 2, the Court has no basis upon which to conclude that the treats are so unsafe that no reasonable consumer would purchase them. Dr. Swanson's expert report is of no help on this front as it at most states: "I would anticipate that *some* dogs would experience difficulty digesting this dog treat." *Id.* (emphasis added). The level of uncertainty in Dr. Swanson's report, combined with his opinion during the deposition that safety associated with digestibility requires a dog-by-dog analysis, makes it clear that Plaintiffs cannot carry their burden based on common evidence alone. *Cf. Dukes*, 564 U.S. at 353–55 (denying motion for class certification where plaintiffs' expert's proposed method for proving a general policy of discrimination could not provide any answer on how common "stereotyped thinking" influences employment decisions).

Sergeant's own testing corroborating Dr. Swanson's testing on dissolution rates does not alter the analysis. Dr. Steiner attempted to faithfully recreate Dr. Swanson's testing method and applied it to Pur Luv Treats as well as other pet treats and unprocessed animal meat. Dr. Steiner's testing shows comparable dissolution rates for the other pet treats and lower dissolution rates for the animal meat products. This testing does not support the hypothesis that dissolution

rates alone are sufficient to establish the safety of a particular food item for the general population of dogs.

The named plaintiffs' experience is equally unhelpful to proving the safety of the dog treats. Among the four named plaintiffs only three took their dogs to veterinarians while the dogs were ill. Of these three, none of the veterinarians identified the Pur Luv Treats conclusively as the cause of the dog's illness. The dog that did not go to the veterinarian only vomited chunks of a Pur Luv treat. Without further evidence it is impossible to say whether this resulted because of a defect with the treat or some other unrelated issue. The four varied experiences of the Plaintiffs' dogs do not support the conclusion that all the Pur Luv Treats share the same defect or that the treats are inherently unsafe for dogs to consume.

In the view of the Court as well as Plaintiffs' own expert, the common evidence Plaintiffs propose to show that the treats are unsafe is not sufficient to establish that claim.[1] Therefore, the Plaintiffs' proposed classes do not satisfy the predominance requirement of Rule 23(b)(3) and the Court denies the motion for certification of all the proposed classes under Rule 23(b)(3).[2]

### B.    Rule 23(b)(2) Class

Plaintiffs also seek to certify their proposed classes under Rule 23(b)(2), seeking a mandatory injunction requiring Sergeant's to recall and reformulate the Pur Luv Treats. A court

---

[1] Plaintiffs likely wonder what evidence would be sufficient to meet this burden. The Court does not have an answer for that hypothetical question, but merely notes that on the facts of this case sufficient common proof is likely hard to come by. As other courts have noted, "Proving a class-wide defect where the majority of class members have not experienced any problems with the alleged defective product, if possible at all, would be extremely difficult." *Mahtani v. Wyeth*, No. CIV.A. 08-6255 KSH, 2011 WL 2609857, at *8 (D.N.J. June 30, 2011) (citation omitted) (internal quotation marks omitted) In trying to argue that a product is categorically unfit for dogs to eat, when very few dogs have experienced ill effects eating it, Plaintiffs are attempting to cross a wide gap, and as such, need a strong bridge.

[2] Because Plaintiffs must satisfy both Rules 23(a) and (b) certify their class, their failure to satisfy Rule 23(b)(3) is fatal and the Court need not address the Rule 23(a) factors. *Messner*, 669 F.3d at 811 (class must satisfy both Rules 23(a) and (b)).

may certify a class under Rule 23(b)(2) where the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). If the contemplated relief is neither appropriate respecting the class as a whole nor final, class certification is not appropriate under Rule 23(b)(2).

To be appropriate for the whole class, the remedy must first satisfy the test for all equitable remedies. Plaintiffs must show that "(1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiffs and defendant; and (4) the public interest would be well served by the injunction." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011)

It is clear from the complaint that Plaintiffs' complained-of injury—purchasing a worthless treat—is remediable through monetary damages. A refund of the product's purchase price would make the Plaintiffs whole. This alone defeats the request for equitable relief.

Additionally, the balance of hardships also disfavors an injunction here. Plaintiffs' proposed injunctive relief not only seeks to force a recall of the Pur Luv Treats, but also a reformulation of the treats to make them safe for all dogs to eat. A mandatory injunction such as this imposes a significant burden on the defendant and considerable enforcement challenges for the Court. *Kartman*, 634 F.3d at 892. The Court would have to determine some standard for evaluating the safety of the reformulated treats. This would likely involve experts and require the Court to engage in an ongoing review process of dog treat safety. Given that Plaintiffs' own expert cannot provide a standard of what constitutes a completely safe dog treat, the Court is not confident that it can develop a standard that satisfies Federal Rule of Civil Procedure 65(d)'s

requirements that the injunction "state its terms specifically" and "describe in reasonable detail" the "act or acts restrained or required." Fed. R. Civ. P. 65(d); *see also Kartman*, 634 F.3d at 893. Therefore, Plaintiffs fail to satisfy Rule 23(b)(2) for this reason as well.

Finally, the Plaintiffs make no real effort to address the issue of injury. Standing to pursue prospective injunctive relief requires a threat of future harm that is not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). Plaintiffs do not explain how the mere presence of the Pur Luv Treats on the market will cause them continuing adverse effects. Without such a showing, they have no standing to pursue an injunction. Therefore, the Court finds this case unsuitable for certification under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, the Court denies the Plaintiffs' motion for class certification [91], denies Sergeant's motion to exclude Dr. Kelly Swanson's expert opinions and testimony [101], and grants in part and denies in part Plaintiffs' motion to exclude Dr. Jörg Steiner's expert opinion and testimony [127].

Dated: September 19, 2018

_____
SARA L. ELLIS
United States District Judge